RECEIVED

JUL - 6 2010

7-6-2010

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

United States of America ex rel.

WILLIAM HOLLAND #N02898
(Full name and prison number)
(Include name under which convicted)

PETITIONER

vs.

DONALD GAETZ, MICHAEL RANDLE
(Warden, Superintendent, or authorized
person having custody of petitioner)

RESPONDENT, and

**(Fill in the following blank only if judgment
attacked imposes a sentence to commence
in the future)** N/A

ATTORNEY GENERAL OF THE STATE OF

LISA M. MADIGAN
(State where judgment entered)

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

10 C 4169
Judge Ruben Castillo
Magistrate Judge Susan E. Cox

**TLMS**

**FILED**

**JULY 16, 2010**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

Case Number of State Court Conviction:

99 CR 4981

## PETITION FOR WRIT OF HABEAS CORPUS -- PERSON IN STATE CUSTODY

1. Name and location of court where conviction entered: COOK COUNTY CRIMINAL COURT, 2650 S. CALIFORNIA AVE., CHICAGO, IL 60608

2. Date of judgment of conviction: MAY 9, 2002

3. Offense(s) of which petitioner was convicted (list all counts with indictment numbers, if known)

FIRST DEGREE MURDER-2 COUNTS #99 CR 4981

4. Sentence(s) imposed: NATURAL LIFE

5. What was your plea? (Check one)      (A) Not guilty      (☒)
                                        (B) Guilty          (  )
                                        (C) Nolo contendere (  )

If you pleaded guilty to one count or indictment and not guilty to another count or indictment, give details:

N/A

**PART I -- TRIAL AND DIRECT REVIEW**

1. Kind of trial: (Check one):      Jury ( )      Judge only (X)

2. Did you testify at trial?    YES (X)      NO    ( )

3. Did you appeal from the conviction or the sentence imposed? YES (X)   NO ( )

   (A) If you appealed, give the

      (1) Name of court: _ILL APPEALLATE COURT_

      (2) Result: _DENIED_

      (3) Date of ruling: _DECEMbER 19, 2003_

      (4) Issues raised: _Violations of 4th, 5th and 6th amend._
_Ineffective assistance of counsels at both_
_trial and direct appeal; plaintiff had filed_
_(SEE 2-A)_

   (B) If you did not appeal, explain briefly why not:

       _N/A_

4. Did you appeal, or seek leave to appeal, to the highest state court? YES (X)    NO ( )

   (A) If yes, give the

      (1) Result   _DENIED; cited UNtimElY_

      (2) Date of ruling: _MAY 26, 2004_

      (3) Issues raised: _The 4th, 5th and 6th amendments violations ·_
_Ineffective assistance of counsels at both Trial_
_and direct appeal; plaintiff had filed motion_
_(SEE 2-A + 2B)_

   (B) If no, why not: _N/A_

5. Did you petition the United States Supreme Court for a writ of *certiorari*? Yes ( ) No (X)

   If yes, give (A) date of petition: _____ (B) date *certiorari* was denied: _____

2

CONTINUED: FROM PAGE 2

PART I -- TRIAL AND DIRECT REVIEW

3.
(A)

(4) ISSUES RAISEd:
motion in open court to dismiss trial counsel motion
was ignored and never ruled on after judge
had promised to do so.
Denial of plaintiff constitutional rights to
a fair and impartial trial concerning a
capitol offense.
Plaintiff did not have complete transcript at
appellate level durning his appeal process;
transcript was not received until 2005.
Policemen had lied and sabrotaged crucial evidences,
which was favorable to plaintiff.
Prosecutorial misconduct, false charges, deliber-
ately calculated solicitation of false evi-
dences; suppressed favorable evidences.
the state's witnesses testimonies were largely
inconsistent with each other's, their perjured
testimonies were an accumulation of lies, and
had been coached-key witnesses
Plaintiff should have been charged with a lesser
charge other than murder.

4. Sought LEAVE TO APPEAL TO ILL SUPREME COURT
(3) ISSUES RAISED - CONTINUES:
IN OPEN COURT ON 12-2-99 to dismiss trial
counsel, said motion was ignored and never ruled
on after judge had promised to do so.

CONTINUED: FROM PAGE 2-A

Denial of plaintiff constitutional rights to a fair and impartial trial concerning a capital offense. Plaintiff did not have his complete transcript at appellate level durning the appeal process; transcript was not received until 2005

Policemen had lied and sabotaged crucial evidences, which was favorable to plaintiff.

Prosecutorial misconduct, false charges, deliberately calculated solicitation of false evidences; suppressed favorable evidences.

The state's witnesses testimonies were largely inconsistent with each others, their perjured testimonies were an accumulation of lies, and had been coached by the prosecutor.

Plaintiff should have been charged with a lesser charge other than murder.

The crux of the problem was, how could the court had ascertained as to what results would have materialized had the witness been confronted with the torn/cut jacket.

2-B

**PART II -- COLLATERAL PROCEEDINGS**

1. With respect to this conviction or sentence, have you filed a post-conviction petition in state court?

YES (X)   NO ( )

With respect to *each* post-conviction petition give the following information (use additional sheets if necessary):

A.   Name of court: _Cook County Circuit Court_

B.   Date of filing: _September 8, 2004_

C.   Issues raised: _a 4th, 5th and 6th amendments violations. Ineffective assistance of counsels at both trial and direct appeal. (SEE PAGE 3-A)_

D.   Did you receive an evidentiary hearing on your petition?   YES ( )   NO (X)

E.   What was the court's ruling? _DENIED_

F.   Date of court's ruling: _OCTOBER 18, 2007_

G.   Did you appeal from the ruling on your petition?   YES (X)   NO ( )

H.   (a) If yes,   (1) what was the result? _DENIED_

(2) date of decision: _DECEMBER 31, 2009_

(b) If no, explain briefly why not: _N/A_

I.   Did you appeal, or seek leave to appeal this decision to the highest state court?

YES (X)   NO ( )

(a) If yes,   (1) what was the result? _DENIED_

(2) date of decision: _March 24, 2010_

(b) If no, explain briefly why not: _N/A_

3

PART II -- COLLATERAL PROCEEDINGS

1. With respect to this conviction or sentence post-conviction Petition in state court.

C. ISSUES RAISED; CONTINUES

Plaintiff had file a motion for this dismissal of trial counsel; motion was ignored and never ruled on after the court had promised to do so.

Denial of Plaintiff constitutional rights to a fair and impartial trial concerning a capital offense.

Plaintiff did not have complete transcript for appellate level durning his appeal process; transcript was not received until 2005.

Policemen had lied and sabotaged crucial evi-dences, which was favorable to plaintiff. Prosecutional misconduct; false charges; delib-erately calculated solicitation of false evidences; suppressed favorable evidences.

The State's witnesses testimonies were largely inconsistent with each other; their perjured testimonies were an accumulation of lies, and had been coached by prosecutor.

Plaintiff should had been charged with a lesser charge other than murder.

The crux of the problem was how, how could the court had ascertain as to what results would have materialyzed had the witness been confronted with the torn/cut jacket.

3-A

continuation of (C.)

Please take note: the above-mentioned, "Issues raised", are somewhat abandoned at the Illinois Appeallate level in favor of the following motions because it is believe that they supercedes all other grounds. All motions are attached to the end of petition for Writ of Habeas Corpus:

Brief and Argument For Petitioner-Appellant Pages 3-36; Reply Brief and Argument For Petitioner-Appellant pages 1-15. The appellate court later denied petition.

A timely Petition For leave to appeal was filed to the Illinois Supreme Court, pages 1-20 and appendix appeallate Court decision pages 1-11, and supsequently denied, as of March 24, 2010.

3-B

2. With respect to this conviction or sentence, have you filed a petition in a **state court** using any other form of post-conviction procedure, such as *coram nobis* or habeas corpus? YES ( ) NO (X)

    A. If yes, give the following information with respect to each proceeding (use separate sheets if necessary):

        1. Nature of proceeding      N/A

        2. Date petition filed      N/A

        3. Ruling on the petition      N/A

        3. Date of ruling      N/A

        4. If you appealed, what was the ruling on appeal?      N/A

        5. Date of ruling on appeal      N/A

        6. If there was a further appeal, what was the ruling ?      N/A

        7. Date of ruling on appeal      N/A

3. With respect to this conviction or sentence, have you filed a previous petition for habeas corpus in **federal court**? YES ( ) NO (X)

    A. If yes, give name of court, case title and case number:      N/A

    B. Did the court rule on your petition? If so, state

        (1) Ruling:      N/A

        (2) Date:      N/A

**4. WITH RESPECT TO THIS CONVICTION OR SENTENCE, ARE THERE LEGAL PROCEEDINGS PENDING IN ANY COURT, OTHER THAN THIS PETITION?**

**YES ( ) NO (X)**

If yes, explain:      N/A

## PART III -- PETITIONER'S CLAIMS

1. State briefly every ground on which you claim that you are being held unlawfully. Summarize briefly the facts supporting each ground. You may attach additional pages stating additional grounds and supporting facts. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds later.

**BEFORE PROCEEDING IN THE FEDERAL COURT, YOU MUST ORDINARILY FIRST EXHAUST YOUR STATE COURT REMEDIES WITH RESPECT TO EACH GROUND FOR RELIEF ASSERTED.**

(A) Ground one _Ineffective assistance of counsels at trial,_
Supporting facts (tell your story briefly without citing cases or law):

direct appeal and postconviction petition resulting in violations of 4th, 5th, 6th, 8th and 14th amendments. Plaintiff had filed motion for the dismissal of trial counsel; direct appeal and Post conviction counsel did not do anything for plaintiff. Trial counsel wouldn't obtain certain records, or petioner property until day before trial.

(B) Ground two _Did not receive transcript of Cedric Moore_
Supporting facts:

Testimony until 2005, hampering plaintiff appeal process. Prosecutor's knowing use of perjured testimonies, violation due process clause; had failed to turn over crucial evidences, had coached witness; presented false charges; allowed policemen to lie and steal my personal property. Plaintiff should have been charged with a lesser charge other than murder.

5

(C) Ground three _Capital offense trial marred and_
Supporting facts: _deficiency of psychological evaluation._
With the many civil rights violations, the
shoddy defense prosecutorial misconduct,
ineffective counsel denial of exculpatory evi-
dences, are interrelated and intertwined with
one another, resulting in constitution right vio-
lations that gives the prosecutor advantage that
Illinois State Judical system allows.

(D) Ground four _Most importantly the plaintiff should_
Supporting facts:
have been given a sanity hearing:
SEE ATTACHED: Brief and argument Petitioner - [For]
appellant pages 3-36; Reply Brief and
argument For Petitioner-Appellant PAGES
1-15, and Petition For Leave to Appeal pages
1-20 and Appendix appellate court decision
1-11. SEE EXHIBIT One to six, STARTING ON PAGE 8
OF This HABEAS CORPUS.

2  Have all grounds raised in this petition been presented to the highest court having jurisdiction?
   YES (X)   NO ( )

3. If you answered "NO" to question (16), state briefly what grounds were not so presented and why not:

_____

_____

## PART IV -- REPRESENTATION

Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(A) At preliminary hearing _PUbLic DEFENdER'S OFFiCE_

(B) At arraignment and plea _LANA JOHNSON_

(C) At trial _DENISE A. STREFF + LANA JOHNSON_

(D) At sentencing _DENISE A. STREFF_

(E) On appeal _LiSA S. OTTENFELD + Pro SE_

(F) In any post-conviction proceeding _____

(G) Other (state): _N/A_

## PART V -- FUTURE SENTENCE

Do you have any future sentence to serve following the sentence imposed by this conviction?

YES ( )     NO (X)

Name and location of the court which imposed the sentence: _N/A_

Date and length of sentence to be served in the future _N/A_

WHEREFORE, petitioner prays that the court grant petitioner all relief to which he may be entitled in this proceeding.

Signed on: _6-23-10_
(Date)

_____
Signature of attorney (if any)

**I declare under penalty of perjury that the foregoing is true and correct.**

_William Holland_
(Signature of petitioner)
# NOQ898
(I.D. Number)
_P.O. Box 711_
(Address) _MENARd, IL 62259_

REVISED 01/01/2001

7

FEDERAL HABEAS CORPUS PETITION, COOK COUNTY #99-CR-498

1. MOTION FOR APPOINTMENT OF COUNSEL

2. IN FORMA PAUPERIS APPLICATION W/TRUST FUND PRINT-OUT

3. ILLINOIS SUPREME CT. DECISIONS, MAY 26, 2004 and MARCH 24, 2010

4. PETITION FOR WRIT OF HABEAS CORPUS, PAGES 1 - 7

5. PAGES "8" EXHIBITS 1 THRU 6

6. APPELLATE BRIEF AND ARGUMENT FOR PETITIONER-APPELLANT PAGES 3 - 36

7. APPELLATE REPLY BRIEF AND ARGUMENT FOR PETITIONER - APPELLANT PAGES 1 - 15

8. ILLINOIS SUPREME COURT'S PETITION FOR LEAVE TO APPEAL PAGES 1 - 20

9. APPENDIX - APPELLATE COURT DECISION PAGES 1 - 11

**SUPREME COURT OF ILLINOIS**
**CLERK OF THE COURT**
SUPREME COURT BUILDING
SPRINGFIELD, ILLINOIS 62701
(217) 782-2035

97989

May 26, 2004

Mr. William Holland
Reg. No. N-02898
P. O. Box 711
Menard, IL 62259

No. ) 97989 - People State of Illinois, respondent, v. William
            Holland, petitioner.  Leave to appeal, Appellate
            Court, First District.

    The Supreme Court today DENIED the petition for leave to

appeal in the above entitled cause.

    The mandate of this Court will issue to the Appellate Court

on June 17, 2004.

109862

SUPREME COURT OF ILLINOIS
CLERK OF THE COURT
SUPREME COURT BUILDING
SPRINGFIELD, ILLINOIS 62701
(217) 782-2035



MAR 2 6 2010

*DOCKETING DEPARTMENT*
*State Appellate Defender, 1st District*

March 24, 2010

Mr. Michael George Soukup
Assistant Appellate Defender
203 N. LaSalle Street
24th Floor
Chicago, IL 60601-1217

No. 109862 - People State of Illinois, respondent, v. William
Holland, petitioner. Leave to appeal, Appellate
Court, First District.

The Supreme Court today DENIED the petition for leave to appeal in the above entitled cause.

The mandate of this Court will issue to the Appellate Court on April 28, 2010.

# Village of



**POLICE DEPARTMENT**

# MAYWOOD

125 SOUTH FIFTH AVENUE  •  MAYWOOD, ILLINOIS 60153  •  (708) 343-2124

DOROTHY M. STEWARD
*Deputy Chief of Police*
(708) 450-4456
(708) 343-1012 (FAX)

February 8, 1999

Mr. William Holland
#19990005433
P. O. Box 089002
Chicago, Illinois  60608

REFERENCE:    COMPLAINT OF POLICE MISCONDUCT

Dear Mr. Holland:

Your complaint of February 1, 1999, alleging misconduct by members of the
Maywood Police Department has been referred to a supervisor for investigation.  The
supervisor will be contacting you for more detailed information in the near future.  Your
complaint has been assigned Complaint Investigation Number 99-0006.  Kindly refer to
this number when making inquiries.

Sincerely,

Dorothy M. Steward
Deputy Chief

cc:    David Walker
       Chief of Police

       Carl Patterson, Sergeant

PAGE 8        EXHIBIT "1"



*Village of* **POLICE DEPARTMENT**

# MAYWOOD

125 SOUTH FIFTH AVENUE • MAYWOOD, ILLINOIS 60153 • (708) 343-2124

DOROTHY M. STEWARD
*Deputy Chief of Police*
(708) 450-4456
(708) 343-1012 (FAX)

April 12, 1999

William Holland
#19990005433
P. O. Box 089002
Chicago, Illinois 60608

REFERENCE:     COMPLAINT #99-0006

Dear Mr. Holland:

An investigation has been conducted into your allegation members of the Maywood Police Department failed to return your property when you were turned over to the Chicago Police Department. I want to thank you for bringing this matter to our attention. Whenever evidence sufficient to sustain an allegation is obtained, appropriate disciplinary action is imposed. It has been determined, however, that your property was turned over to the Chicago Police Department, Area Two Detective Division, when you were released to that jurisdiction. Please contact them to obtain further information.

Sincerely,

*Dorothy M. Steward*

Dorothy M. Steward
Acting Deputy Chief

EXHIBIT " **2** "

April 23, 1999

Please take notice, the following items was confiscated from me on January 22, 1999 by the Maywood Police Department, and turned over to the Chicago Police Department, area Two Detective Division.

Per: Dorothy M. Steward
Acting Deputy Chief.

1. wallet with my identification, a I m and (4) four other credit cards

2. black pager

3. gold seiko watch

4. two (2) gold neck chains one of the chain contained a gold cross.

5. a red + black flannel shirt

6. a black jacket + Block Belt.

7. approximately one hundred forty (dollars) US currency

as of the above date - I have yet to receive any of it.

William Holland
#000 5433

C.C.

EXHIBIT "J"

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS )
         Plaintiff, )
             )
             )
             )
     –VS.–        )   Case. No. 99CR0498101
             )       &
             )     99CR 0904901
             )
             )   THE HONORABLE DENNIS A. DERNBACH
WILLIAM HOLLAND       )   Presiding Judge
       Defendant. )

### MOTION FOR APPOINTMENT OF COUNSEL OTHER THAN PUBLIC DEFENDER

Now comes the Defendant, WILLIAM HOLLAND, PRO SE, and moves this Honorable Court

pursuant to ILCS Chapter 725 para–5/113-3 Stat., Ch. 34 Sec. 3-006 for the appoint-

-ment of counsel other than the Public Defender to represent him in the above crimi-

nal cause.

In support therefo, and with respect to Rules requiring a showing of good cause,

Defendant states:

(1) That Defendant is before this Court on charges of Murder / Armed Robbery in vio-

   lation of ILCS of Chap. 720, Sec. 5 and 9 ; Chap. 5. Sec. 18 and 2 ot the ILCS.

(2) That the Detendant has become an indigent person since h is detainment.

(3) That Defendant has made several appearance before this Court. and no line of mean-

   ingful communication has been established between Defendant, and the counsel

   appointed to him from the Public Defender's Office, or any other representative of

   their office.

(4) That Defendant has had no conference, or visits concerning his case with Ms. Denise

   Sheff, or any other representative of the Public Defender's Office.

(5) That Defendant's attempts to determine why defense counsel has not filed all pre-

   trial motions that Defendant feel is proper and with merits has led to negative

   responses which makes it impossible for defendant to have an attorney/client re-

   lationship with said Counsel.

exhibit " 4 " pages 1-2

(6) That defense counsel whole demeanor has been that she is not concerned with Defendant "guilt or innocence" and did not need to know the situation that occurred.

(7) That Defendant was informed by said counsel that neither she , or the Office of of the Public Defender's is equipped with the necessary resources, or personel which is required to investigate all of the circumstances involved in any particular case handler by their office, and that usually their first order of business is to effect the least possible sentence through plea bargaaining.

(8) That there is no question of law other than the fact that Defendant has a constitutional right to be represented by counsel who will render effective assistance of counsel as imposed by the Sixth Amendment of the United States Constitution. See; Strickland v. Washington, 104 S. Ct 2052 (1984).  Moreover, the statutes under Illinois Law upon which this motion is based, authorize this Court to appoint counsel other than the Public Defender's Office where Defendant, accused will be prejudiced with the representation of the Public Defender as Counsel.

WHEREFORE, on the basic of the foregoing contention and assertion of Defendant; Defendant prays that this motion be granted.

Dated: December 2, 1999

Respectfully  submitted,

*William Holland*

WILLIAM HOLLAND

# 19990005433

P.O. Box 089002

Chicago, Illinois 60608



office of the
# COOK COUNTY PUBLIC DEFENDER

69 WEST WASHINGTON • 15TH FLOOR • CHICAGO, IL 60602 • (312) 603-0600

**Rita A. Fry • Public Defender**

February 13, 2003

Mr. William Holland
Reg. No. N-02898
711 Kaskaskia Street
Menard, IL 62259

Re: 02-1881

Dear Mr. Holland:

I am writing in response to your recent letter. I am one of two unit attorney supervisors in the Appeals Division. Your appellate record was assigned to my unit. It is my responsibility to assign your appeal to one of the attorneys in my unit. I have not assigned your case to one of the attorneys in my unit yet because it is incomplete.

I will take this time to let you know what my job is concerning your appeal. It is my job to review your record to see if it is complete, record it in my records, prepare any necessary motions (the refer to jury trial was a typo error in the motion and will not affect the court's ruling on the motion) and assign it to one of the attorneys in my unit. While reviewing your appellate record, I determined that it is missing several dates (02/27/02 & 05/28/02). I have ordered the dates from the court reporter's office and filed a motion with the court requesting more time to file the record. Your appeal will not be assigned to an attorney until I receive the missing dates.

When I assign your case to one of the attorneys in my unit, that attorney will then write you and keep you informed about your case on appeal. You will be able to reach that attorney at the telephone number and address at the top of this letter.

I have not read your record so I cannot answer specific questions about your case or tell you how your appeal will be handled. If there are issues that can be raised on appeal, those issues will be raised by the attorney assigned to your case. Our records indicated that you have been mailed a copy of the trial transcript. When the missing dates are received you will also be mailed a copy of them. Also I can not assist you with the bond refund. You and or your family should contact the trial attorney for assistance with the bond refund.

$(5)$
EXHIBIT (#) page 1 of 2


Printed on Recycled Paper



Law Office of the
## COOK COUNTY PUBLIC DEFENDER
69 W. WASHINGTON • 15ᵀᴴ FLOOR • CHICAGO, IL 60602 • (312)603-0600

Edwin A. Burnette • Public Defender

July 22, 2004

Mr. William Holland
Reg. No. N-02898
Menard Correctional Center
711 Kaskaskia Street
P.O. Box 711
Menard, IL 62259

Re: 02-1881

Dear Mr. Holland:

I am writing in response to your letter to the Office dated March 18, 2004, regarding missing transcript dates. Ms. Ottenfeld is no longer in the Appeals Division. I was not aware that you had not received certain transcripts. It will take a few weeks to locate the transcript, because since the building fire in October, 2003, we have been out of the building and had limited access to our files. We will be returning permanently to the building the second week of August, at that time I will attempt to locate the transcripts and have them mailed to you. If I am unable to find the original transcripts, I will have copies made for the appellate record.

Sincerely,

Vicki Rogers,
Assistant Public Defender
Chief, Appeals Division

EXHIBIT (9)              Page 1 iF 2

I have also enclosed a ten page description of what happens on appeal. If you have any questions about your appeal after reading this letter and the attached information you may call me collect or write me at the address and telephone listed above.

Sincerely,

Vicki Rogers,
Assistant Public Defender
Unit Supervisor

Enclosure

No. 1-07-3242

## IN THE

## APPELLATE COURT OF ILLINOIS

## FIRST DISTRICT

| | | |
|---|---|---|
| **PEOPLE OF THE STATE OF ILLINOIS,** | ) | Appeal from the Circuit Court of Cook County, Illinois |
| Respondent-Appellee, | ) | |
| | ) | 99 CR 4981 |
| -vs- | ) | |
| | ) | |
| **WILLIAM HOLLAND,** | ) | Honorable |
| | ) | Dennis A. Dernbach, |
| Petitioner-Appellant. | ) | Judge Presiding. |
| | ) | |

## BRIEF AND ARGUMENT FOR PETITIONER-APPELLANT

MICHAEL J. PELLETIER
State Appellate Defender

PATRICIA UNSINN
Deputy Defender

MICHAEL G. SOUKUP
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472

COUNSEL FOR PETITIONER-APPELLANT

## ORAL ARGUMENT REQUESTED

## STATEMENT OF FACTS

William Holland was sentenced to a term of natural life imprisonment on May 9, 2002, following his conviction for the first degree murder of his wife, Mattie Holland. (TC. 49; TR. V2. E.111)[1] On January 22, 1999, Holland entered a bar known as the Bankston Lounge, which he co-owned with his wife, and shot her multiple times in front of several people. (TR. V2. C.6, 17, 26) At the time, Holland was subject to an order of protection, which his wife obtained, and on that basis the judge found Holland eligible for the death penalty. (TR. V2. E.13, 21-22) The judge decided not to impose the death penalty, based partly on the fact that Holland suffered from serious mental health disorders. (TR. V2. E.109-11)

After Holland's conviction was affirmed on December 19, 2003, Holland filed a post-conviction petition, which raised several issues. (C. Supp. V2.2-7; PC. 11-61) The circuit court appointed Holland counsel, who concluded that Holland's petition adequately stated his constitutional claims and did not file an amended petition. (PC. 62; PR. G.3; W.3) The State filed a motion to dismiss on September 27, 2007, which the court granted on October 18, 2007. (PC. 63-81; PR. Y.11-13) Holland now appeals that dismissal. (PC. 82-84)

### Trial

Holland waived his right to a jury for both the guilt or innocence phase

---

[1]Citations to the record are abbreviated in the following manner: "(TC. _)" refers to the trial's common law record, "(TR. V_)" refers to the trial's report of proceedings, "(PC. _)" refers to the post-conviction petition's common law record, "(PR. _)" refers to the post-conviction petition's report of proceedings, and "(C. Supp. V_)" refers to the supplemental records.

of his trial and the death penalty hearing. (TC. 42; TR. V1. A.3-6)

The trial commenced on February 25, 2002. (TR. V1. A.8) Ray Johnson testified that he was present at the Bankston Lounge, located at 1005 West 71st Street in Chicago, when William Holland entered the bar and shot his wife Mattie. (TR. V1. A.18, 24-25, 28) Johnson arrived at the bar at 11:00 p.m. on January 21, 1999, and noticed that Mattie was there. (TR. V1. A.19) At approximately 12:30 a.m., Johnson was playing darts when he noticed that Holland was in the bar. (TR. V1. A.22-25) At the time, Johnson and Mattie were in the rear of the bar. (TR. V1. A.23-26) Johnson observed Holland walk towards the office and peer inside. (TR. V1. A.25-26) After leaving the office, Holland began to approach Johnson. (TR. V1. A.26-27) At that moment, Mattie was standing right behind Johnson. (TR. V1. A.26-27)

When Holland was about an arm's reach away, Johnson told Holland he "didn't have to do this." (TR. V1. A.27) Holland told Johnson that he "ain't got nothing to do with this," and pushed Johnson to the side. (TR. V1. A.27) Then Holland began shooting towards Mattie and the bullets hit her multiple times. (TR. V1. A.28-30) After the shots were fired, Johnson observed Holland walk casually out of the bar. (TR. V1. A.29) *He said he walk in the back door*

One of the officers who arrived on the scene after the shooting found a gun in Mattie's pocket. (TR. V1. B.7-8) Johnson did not observe Mattie with a gun at any point in time. (TR. V1. A.30, 37) Johnson denied that he attacked Holland before Holland starting shooting. (TR. V1. A.43-44)

The State called five more witnesses who were in the bar during the shooting: John Young, James Esther, Phyllis Stokes, Evlyn Stokes, and Patrick

Knox. (TR. V1. A.48, 68, 84, 101, 122)  All five of the witnesses agreed on certain facts: that Holland entered the bar at approximately 12:30 a.m.; that Holland walked toward and peered into the office; that after leaving the office they observed Holland with a silver gun; that Holland approached Johnson and pushed Johnson aside with his left arm; that Holland pointed the gun at Mattie and fired multiple times; and that he then walked out of the bar. (TR. V1. 51-58, 70-76, 87-92, 103-08, 123-30)  In addition, none of these individuals observed a gun in Mattie's hand during the shooting. (TR. V1. A.62, 76, 92, 107,128-29)

Police officers who responded to the scene interviewed the witnesses and sent out a dispatch telling officers to look for a black male, age 40 to 50, driving a red Chevy with the license plate "Matbil2." (TR. V1. B.8-9) At approximately 1:25 a.m. Maywood police officer Eric Dent observed a vehicle matching the description given in the message. (TR. V1. B.13) Dent observed the vehicle speed away from him and so Dent activated the emergency lights on his squad car and chased the vehicle. (TR. V1. B.14) Dent chased the vehicle for several blocks until it crashed and flipped over onto the passenger side. (TR. V1. B.15) Dent ordered the driver to show his hands and open the door, which the driver did. (TR. V1. B.16) Dent approached the driver and handcuffed him. (TR. V1. B.16) In court, Dent identified this individual as William Holland. (TR. V1. B.16)

After placing Holland in custody, Dent searched Holland and found a nickel-plated .380 caliber semi-automatic handgun. (TR. V1. B.17) Tests later would reveal that it was the same gun that was used to shoot Mattie. (TR. V3.

17-18) Dent informed Holland of the *Miranda* warnings, and Holland said, "I'm glad you motherfuckers caught me so I didn't have to hurt anyone else." (TR. V1. B.17-19)

At the police station, Detective Robert Girardi interviewed Holland about the shooting. (TR. V1. B.41) Girardi also advised Holland about the *Miranda* warnings, and Holland agreed to speak with Girardi. (TR. V1. B.42-43) Holland said that he had marital problems with Mattie. (TR. V1. B.43) In early January 1999, Mattie had Holland arrested for battery and obtained an order of protection against him. (TR. V1. B.43) Holland was very upset about the situation, including the fact that he could not stay at the bar. (TR. V1. B.44) Holland told Girardi that after his release, he acquired a chrome .380 caliber semi-automatic handgun. (TR. V1. B.44) When he got to the bar on the morning of January 22, 1999, he became very angry when he saw Mattie and shot her. (TR. V1. B.44)

After the State rested its case, Holland testified on his own behalf. (TR. V2. C.3) He said that he did go to the bar that evening, but was not armed when he arrived. (TR. V2. C.15-17) He denied telling the detectives that he purchased a gun because of the arrest related to the order of protection or that he came to the bar armed. (TR. V2. C.31-32) Holland admitted that he knew he could not go to the bar because of the order of protection, but believed that under the terms of the order he could go one time to pick up personal belongings. (TR. V2. C.33) His intention that evening was to pick up his auger and gun located in the office, give Mattie some candy, and have a drink. (TR. V2. C.27)

When Holland first entered the bar, he greeted the people sitting near the door and then walked towards the office. (TR. V2. C.20) He went inside the office and picked up the gun. (TR. V2. C.20) He left the office and noticed Mattie was near the jukebox at the back of the bar. (TR. V2. C.20) He observed a gun in her pocket. (TR. V2. C.20-21) Then Ray Johnson stepped in front of him and lunged at him. (TR. V2. C.23-24) Holland did not see anything in Johnson's hand, but Holland believed Johnson stabbed him with a dart, which ripped Holland's jacket. (TR. V2. C.24) In response, Holland took the gun out of his pocket, aimed at Johnson, and shot at him. (TR. V2. C.25) Johnson fell to the ground and Holland shot towards Johnson again. (TR. V2. C.26) Then, he began to shoot Mattie. (TR. V2. C.26) Holland agreed that Mattie had nothing in her hands when he shot her. (TR. V2. C.44)

Before resting, the parties stipulated that an investigator with Cook County attempted to find, but could not locate, Holland's jacket following Holland's arrest. (TR. V2. C.52)

On March 26, 2002, after closing arguments, the court found there was insufficient proof that Holland acted in self-defense, even if Holland's jacket had been ripped. (TR. V2. C.77-78) Consequently, the court found that the State proved beyond a reasonable doubt that Holland committed first degree murder. (TR. V2. C.77-78)

### Death Penalty Eligibility and Capital Sentencing Hearing

The court held the death penalty eligibility and capital sentencing hearing on May 9, 2002. (TR. V.2 E.12) The State sought the death penalty on two grounds: that Holland shot Mattie while she had an order of protection

girlfriend was living and told the person who answered the phone that he was coming over to kill his ex-girlfriend. (TR. V.2 E.55-56) Hours later, Holland arrived at the house, shot two people who were living there, and then shot his ex-girlfriend multiples times. (TR. V.2 E.57) Holland fled, but later turned himself in to police. (TR. V.2 E.57-58)

Officer William Fashinbauer testified about the more recent incident involving Mattie's statement that Holland had battered her, which led to the order of protection on January 4, 1999. (TR. V.2 E.62-66) Steven Rodriguez, who worked for the Cook Country Sheriff's Office, testified that Holland punched him while he was transferring Holland from jail to court regarding the order of protection. (TR. V.2 E.70-72)

Around 1:15 a.m. on the night of the shooting, Raymond Scott was working as a security guard at a Chicago Housing Authority building when Holland entered the building where Scott was working and robbed Scott of his gun at gunpoint. (TR. V.2 E.25-32) Scott testified that Holland then ordered a woman standing nearby to come with him, but the woman fled. (TR. V.2 E.30-31) Officer David Harris testified that on the night of the shooting, after Holland was arrested and placed in the lockup, Holland threw a cup of urine at him and stated, "Ha, ha, I got you" after throwing the urine. (TR. V.2 E.45-47, 52) At the hearing, Holland waved as Harris identified him. (TR. V.2 E.45)

Antonio Sommerio, correctional officer for Cook County, testified that on May 30, 2001, as he was escorting another detainee to the dispensary within the Cook County Jail, Holland stepped up to Sommerio and punched him in the face. (TR. V.2 E.74-77) In court, the prosecutor asked Sommerio to identify

Holland. (TR. V.2 E.75) The prosecutor asked, "Is he the man, for the record, that's waving and smiling at you?" (TR. V.2 E.75) Sommerio replied, "Yes, he is." (TR. V.2 E.75)

The State introduced victim impact statements from Mattie's mother and Mattie's son, LaTroy Jones. (TR. V.2 E.80, 82) Mattie's mother was unable to attend court, so the prosecutor read her statement. (TR. V.2 E.80-82) Jones was present and read his statement to the court. (TR. V.2 E.87-89) After Jones finished saying that Holland caused nothing but pain in his life and that he was blessed to have Mattie as his mother, Holland said out loud that he agreed. (TR. V.2 E.88-89)

For mitigation evidence, Holland's attorney presented a report by Dr. Larry Heinrich, an expert in the field of forensic psychology. (TR. V.2 E.92-93) Dr. Heinrich did not testify; instead, the parties stipulated to Dr. Heinrich's report. (TR. V.2 E.92-93) Before trial, on August 27, 2001 and October 31, 2001, Dr. Heinrich had interviewed and evaluated Holland, including administering several psychological tests. (TR. V.2 E.92-93) Defense counsel tendered a copy of the report to the prosecution and the court. (TR. V.2 E.93)

The parties then presented argument on sentencing alternatives. (TR. V.2 E.94, 100) The prosecutor began his argument by calling Holland "evil," remarking that Holland went to the bar looking for Mattie, disregarding the order of protection, and brazenly shot Mattie several times in front of many witnesses before casually walking out of the bar. (TR. V.2 E.94)

The prosecutor then began to discuss Holland's background, when Holland interrupted the proceedings. (TR. V.2 E.95) The prosecutor said, "not

police on a chase after the shooting. (TR. V.2 E.97) The prosecutor also mentioned that Holland, on the way home after the shooting, committed an armed robbery and tried to take a woman hostage at gunpoint. (TR. V.2 E.97) Holland interrupted saying, "And you're lying about that now too. I'm tired of that. That's not even in the report." (TR. V.2 E.97-98)

Defense counsel started her argument for mitigation by informing the court that Holland, currently and for a long time, suffered from severe mental health disorders. (TR. V.2 E.100) Twenty years earlier, during Holland's 1980 trial for the attempted murder and aggravated battery, the State's psychiatrist found that Holland suffered from personality disorder. (TR. V.2 E.100-02) Dr. Heinrich concluded that Holland continued to suffer from paranoid personality disorder, but also found that Holland had long suffered from bipolar disorder as well. (TR. V.2 E.100-01) In addition, Dr. Heinrich found that Holland now suffered from dementia. (TR. V.2 E.101-02)

Defense counsel continued with her argument, but another disruption occurred. (TR. V.2 E.102) Holland commented about the behavior of the detectives who were present in the courtroom and supposedly rolled their eyes. (TR. V.2 E.102) The court said, "Mr. Holland I have told you --," Holland replied, "I know," and the court finished by saying, "-- you cannot speak." (TR. V.2 E.102-03) Then Holland said, "Well, you know I'm here looking at for the next 40 to 60 years." (TR. V.2 E.103) The court told Holland, "If you won't listen to me -- either be quiet or I'll have you removed from the courtroom. Okay. Take him out." (TR. V.2 E.103) Holland said, "Sorry, your honor." (TR. V.2 E.103) After Holland was removed, defense counsel asked the court to

remove the detectives if they were going to roll their eyes, and the court said, "Mr. Holland's paranoid. Let it go. [...] I saw no indications of any inappropriate behavior [by the detectives]..." (TR. V.2 E.103)

In his ruling, the judge noted certain portions of Dr. Heinrich's report and Holland's mental health history. (TR. V.2 E.108-11) Dr. Heinrich's report indicated that Holland suffered from extreme mental and emotional disturbances, including bipolar disorder, paranoid personality disorder, and dementia. (TR. V.2 E.109-10) Dr. Heinrich also found that Holland was experiencing neurological and cerebral degeneration. (TR. V.2 E.110-11) The court also considered that during the 1980 trial one of doctors found Holland legally insane, and although the State's doctor disagreed, the State's doctor admitted that Holland did suffer from a personality disorder. (TR. V.2 E.110) The judge found that Holland, when confronted with situations he does not like, is unable to control his behavior. (TR. V.2 E.108-09) The judge concluded that Holland was totally incapable of being let back out of prison or put in any kind of society where he must deal with people. (TR. V.2 E.109)

Ultimately, based on Holland's mental disorders as well as his age and his physical health, the judge declined to sentence Holland to death. (TR. V.2 E.111) Instead, the judge sentenced Holland to a term of natural life imprisonment. (TR. V.2 E.111)

*Appeal*

On direct appeal, the public defender filed a motion to withdraw as counsel pursuant to *Anders v. California*, 386 U.S. 738 (1967). (C. Supp. V3.2-

18)[2]  Holland filed a *pro se* response arguing several grounds including prosecutorial misconduct, and ineffective assistance of trial and appellate counsel. (C. Supp. V2.2-3)  Holland argued that the prosecution sabotaged exculpatory evidence.  (C. Supp. V2.4)  Holland also argued that his trial counsel was ineffective for not contacting several witnesses, failing to adequately question witnesses who did testify, and making no attempts to locate his jacket until the beginning of the trial.  (C. Supp. V2.3-4)  Holland argued that his appellate counsel was ineffective for neglecting to consult with him and was incompetent.  (C. Supp. V2.4-5)

The appellate court addressed each of Holland's claims. (C. Supp. V2.3-5)  For the claim that the State destroyed evidence, the court, assuming Holland was referring to his jacket, found that the issue was waived because it was not properly preserved at trial, and regardless, the trial judge specifically found that the jacket would not have changed the outcome. (C. Supp. V2.4)  For ineffective assistance of trial counsel, it found that either trial counsel's actions fell within trial strategy or there was no prejudice considering the overwhelming evidence.  (C. Supp. V2.3-4)  For ineffective assistance of appellate counsel, the court found that it was not incompetent of appellate counsel to seek withdrawal. (C. Supp. V2.4-5) Consequently, the court allowed appellate counsel to withdraw and affirmed Holland's conviction and sentence. (C. Supp. V25); *People v. Holland,* No. 1-02-1881 (December 19, 2003)

---

[2]For purposes of this appeal, appellate counsel obtained a copy of the Motion to Withdraw Pursuant to *Anders*.  Counsel is waiting for a certified copy of the supplemental record to be prepared, and will file it upon receipt.

(unpublished order under Supreme Court Rule 23). The Illinois Supreme Court denied Holland's petition for leave to appeal. *People v. Holland,* 209 Ill. 2d 590 (2004).

### Post-Conviction Proceedings

On September 8, 2004, Holland filed a *pro se* post-conviction petition. (PC. 11-61) He argued that his Sixth Amendment rights were violated based on the Supreme Court decisions in *Blakely v. Washington,* 542 U.S. 296 (2004), and *United States v. Booker,* 543 U.S. 220 (2005). (PC. 14-15) He also argued that the State improperly sought the death penalty, that his trial and appellate counsel rendered ineffective assistance, that the prosecutor committed misconduct, that the State failed to prove him guilty beyond a reasonable doubt, and that the trial court erred in denying his request prior to trial to change defense counsel. (PC. 16-24) Specifically, Holland argued ineffective assistance of trial counsel for not presenting key witnesses, not investigating his case, not consulting with him, not pursuing his defense, and not preserving issues for his appeal. (PC. 17, 22-23) For appellate counsel, Holland argued ineffectiveness based on a failure to consult with Holland and for waiving several key issues. (PC. 23)

The trial court appointed Holland counsel. (PR. G.3) Although counsel at first said he was in the middle of amending Holland's petition, he eventually filed a 651(c) certificate without any amendment. (PC. 62; PR. U.3; W.3)

The State filed a motion to dismiss. (PC. 63-75; R. X.3) The State argued that *Blakely* and *Booker* were inapplicable because Holland waived his right to a jury. (PC. 66-67) As for the remaining claims, the State argued that

they should be dismissed either because of waiver or *res judicata.* (PC. 65-66)
In addition, the State asserted, Holland's claim that the judge should have
granted his motion for substitution of counsel was not a cognizable claim under
the Post-Conviction Hearing Act, as it had no constitutional basis. (PC. 68-69)

At the hearing on October 18, 2007, defense counsel argued that because
the court allowed Holland's petition to the second stage, the court could not
then dismiss the petition based on waiver or *res judicata.* (PR. Y.7-11) The
court disagreed and dismissed the petition, finding that the claims were barred
by waiver or *res judicata,* and that nothing in the petition rose to the level of
a constitutional violation. (PR. Y.11-13) Holland then filed this appeal. (PC.
82-84)

# ARGUMENT

I.    **Fundamental fairness demands that this cause be remanded for the post-conviction court to determine whether Holland was fit at the time of trial and sentencing, considering that his long history of severe mental illness, the onset of dementia, and his outbursts during sentencing raise a *bona fide* doubt of his competency, depriving him of due process.**

William Holland was convicted of first degree murder and faced the possibility of the death penalty, while both trial counsel and the trial judge were aware of several facts creating a *bona fide* doubt regarding Holland's fitness. A forensic psychologist evaluated Holland before trial and found Holland suffered from paranoid personality disorder, bipolar disorder, and early signs of dementia. (TR. V.2 E.92-93, 100-02) During the capital sentencing hearing, Holland waved and smiled when two of the State's witnesses identified him. (TR. V.2 E.45, 75) When the prosecutor argued the State's case for aggravation, Holland interrupted the proceedings time and time again, despite several warnings from the judge to be quiet. (TR. V.2 E.85-86, 95-98, 102-03) Despite the fact that Holland was facing the death penalty, he told the judge multiple times, "What can you do to me?" and remarked that he was only "looking at" 40 to 60 years. (TR. V.2 E.96, 103) Ultimately, the judge removed Holland from the courtroom. (TR. V.2 E.103)

Despite all of these facts, nowhere in the record is there a single reference to whether the question of Holland's competency was considered. Such a failure strikes at the very heart of principles of fundamental fairness and notions of due process. Although Holland did not raise the issue of his fitness explicitly in his petition, because fitness at the time of trial and

sentencing is so fundamental, the issue should be considered on appeal.

Holland's collateral attack of his conviction must not be dismissed without due consideration of whether he was fit at the time of trial and sentencing in order to prevent a fundamental miscarriage of justice. The State is prohibited from prosecuting and sentencing a defendant who is not fit to stand trial. *Drope v. Missouri*, 420 U.S. 162, 171 (1975); *People v. Meyers*, 367 Ill. App. 3d 402, 409 (2nd Dist. 2006). Subjecting an unfit defendant to trial violates the defendant's fundamental and constitutional right to due process. Ill. Const. 1970, art. I, § 2; U.S. Const., amend. XIV; *Pate v. Robinson*, 383 U.S. 375 (1966); *People v. Sandham*, 174 Ill. 2d 379, 382 (1996). Under Illinois law, a defendant is unfit to stand trial when, due to a mental or physical condition, he is unable to understand the nature of the proceedings or assist in his defense. 725 ILCS 5/104-10 (West. 2006). Therefore, if the State prosecutes a defendant who is unfit, it renders the proceedings fundamentally unfair. *People v. Sandham*, 174 Ill.2d at 382, *citing People v. Eddmonds*, 143 Ill. 2d 501, 512-13 (1991); *see also People v. Turner*, 111 Ill. App. 3d 358, 360-61 (2nd Dist. 1982) (a conviction obtained while a defendant is unfit may render the proceedings void).

Whether a *bona fide* doubt of fitness existed at the time of trial is generally reviewed under an abuse of discretion standard, however, a *de novo* review of the record should apply here. Considering fitness is such a fundamental requirement of constitutional dimension, in the absence of any affirmative exercise of discretion regarding the fitness of the defendant, a *de novo* review of the record is required. *See People v. Contorno*, 322 Ill. App. 3d

177 (2nd Dist. 2001). Moreover, under the Post-Conviction Hearing Act, whether the record shows that the petitioner has established a substantial violation of his constitutional rights is reviewed *de novo* when the petition is dismissed prior to an evidentiary hearing. *People v. Coleman*, 183 Ill. 2d 366, 388-89 (1998).

The right to be fit to stand trial is so fundamental, that even if a *bona fide* doubt of a defendant's fitness comes to light after a final conviction, it does not erase the due process violation. *People v. Brown*, 131 Ill. App. 3d 859, 863 (2nd Dist. 1985); *Meyers*, 367 Ill. App. 3d at 409. This is logical considering not only that fitness to stand trial is fundamental, but it is unrealistic to suggest that a defendant can knowingly or intelligently waive the claim that he is unfit, when the competency of the defendant is the very question at issue. *Pate*, 383 U.S. at 384. Therefore, the issue of Holland's competency should not be forfeited, even in the context of post-conviction proceedings.

The Post-Conviction Hearing Act provides defendants with the opportunity to collaterally attack their convictions based on substantial violations of their constitutional rights. 725 ILCS 5/122-1 *et seq.* (West. 2006); *People v. Pendleton*, 223 Ill. 2d 458, 471 (2006). Generally, claims raised in a post-conviction proceeding that could have been raised on direct appeal, but were not, are forfeited. *People v. Blair*, 215 Ill. 2d 427, 443 (2005). In addition, claims not raised in the post-conviction petition cannot be raised for the first time on appeal in post-conviction proceedings due to the doctrine of waiver. 725 ILCS 5/122-3 (West. 2006); *Pendleton*, 223 Ill. 2d at 475. However, the doctrine of waiver is not an ironclad and inflexible bar to all claims. Waiver is not

subject to waiver, remains. Moreover, while the court in *Britz* considered the defendant's claim in the context of a statutory provision that no longer exists, here, Holland's claim is not based on medication or on any statutory provision relating to fitness. Instead, Holland's claim is based on constitutional protections against prosecuting defendants who are unfit. Therefore, the basic principle of *Britz*, that a defendant can properly raise the issue of fitness for the first time on appeal because it involves an issue of fundamental fairness, should allow this Court to consider Holland's claim on appeal considering the *bona fide* doubt raised in the record.

Whether a *bona fide* doubt exists in any particular case depends on the specific facts. *People v. Hanson,* 212 Ill. 2d 212, 222 (2004) ("there are 'no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated.'"), *quoting Eddmonds,* 143 Ill. 2d at 518. Some of the factors to consider when determining the existence of a *bona fide* doubt include the defendant's behavior at trial, counsel's statements regarding the defendant's fitness, and any prior medical opinions on the subject of defendant's competency. *Hanson,* 212 Ill. 2d at 223.

Here, several instances in the record, relating to Holland's behavior in court, his long-standing history of mental illness, and recent psychological evaluations, reveal that a *bona fide* doubt existed at the time Holland was subjected to trial and sentencing. Perhaps the centerpiece of the various facts

is Dr. Larry Heinrich's report,[3] which found that Holland suffered from extreme mental and emotional disturbances, including ongoing neurological and cerebral degeneration. (TR. V.2 E.109-11) Dr. Heinrich did not testify at the capital sentencing hearing, and the parties merely stipulated to his report. (TR. V.2 E.92-93) Dr. Heinrich's report indicated that he met with Holland twice in 2001, while Holland awaited trial. (TR. V2. E.92) During their meetings, he interviewed Holland and administered several psychological tests. (TR. V2. E.92-93) Dr. Heinrich also reviewed past medical opinions, including ones conducted for Holland's 1980 trial for attempted murder and aggravated battery. (TR. V.2 E.100-01, 110) One of the doctors evaluating Holland at that time found him legally insane. (TR. V.2 E.110) Although the State's doctor did not reach the same conclusion, he did find that Holland suffered from personality disorder. (TR. V2. E.100-01, 110) Based on all this information, Dr. Heinrich determined that Holland has long suffered from both paranoid personality disorder as well as bipolar disorder. (TR. V2. E.101-02) In addition, Dr. Heinrich noted that Holland was now suffering from dementia. (TR. V2. E.101-02)

The State's evidence in aggravation tends to corroborate the observation of Holland's long-standing mental health problems and deteriorating mental condition. In 1971, Holland allegedly forced his way into a victim's home and raped her, and then police found him asleep in the victim's bed. (TR. V.2 E.36-

---

[3]For purposes of this appeal, appellate counsel sought, but was unable to obtain, Dr. Larry Heinrich's report. If and when his report is received, appellant counsel will supplement the record.

40) In 1980, Holland forced his way into an ex-girlfriend's residence, shot the two occupants of the home, and then shot his ex-girlfriend multiple times. (TR. V.2 E.55-57) In this case, Holland shot Mattie in front of several people and calmly walked out of the lounge. (TR. V1. A.29) Shortly thereafter he robbed a security guard at gunpoint, demanding the guard's gun when he already had one, then allegedly tried to kidnap a woman standing nearby. (TR. V.2 E.27-32) As he returned home, he led police on a car chase that ended when his car overturned, and then he thanked the officer for stopping him before he hurt anyone else. (TR. V1. B.14-15, 19) When he was placed in jail, he threw a cup of urine on two officers, saying "Ha, ha. I got you." (TR. V2. E.46-48, 52) Holland also punched guards on two separate occasions. (TR. V2. E.70-72, 74-76) All of this behavior is not only violent, but reckless and impulsive to the point of being irrational. Although the State argued that Holland acted in a cold and calculated manner when he shot Mattie, the judge did not find sufficient evidence that he did. (TR. V.2 E.21-22) As the judge noted later, "he seems to have the inability to, when confronted with situations he doesn't like, to in any way control his behavior." (TR. V.2 E.108-09)

Dr. Heinrich's findings, illustrated in part by Holland's violently impulsive behavior, document the serious mental health issues Holland faced. Most importantly, those problems manifested themselves at trial and at sentencing in ways that prevented him from both assisting in his defense and understanding the nature of the proceedings. When Holland testified, he asserted that he acted in self-defense, which he argued again in his post-conviction petition. (TR. V2. C.23-27; PC. 17-18, 43-60) Yet his testimony at

times, but Holland did not relent. (TR. V.2 E.95-98, 102-03)

Most alarmingly, as a defendant facing the death penalty, Holland asked the judge, "What can you do to me?" (TR. V2. E.96) Later, with what would be his last outburst, he told the judge that he was only "looking at" 40 to 60 years, which prompted the judge to remove Holland from the courtroom and refer to him as "paranoid." (TR. V2. E.103) By daring the judge to give him the most strict sentence, while he thought he was only looking at 60 years at the most and as the judge was about to decide his fate, Holland's outbursts further demonstrate his detachment from the proceedings. Holland's behavior goes beyond mere anger or dissatisfaction with the process, but an inability to control his behavior while not grasping the possibility of a sentence of death.

Despite all of these facts, readily apparent to the trial judge and the attorneys who represented him at every single proceeding related to this conviction, the question of whether a *bona fide* doubt of Holland's fitness existed was never raised once. After all the outbursts and comments by Holland that suggested he did not understand he could be sentenced to death, neither the judge or the parties asked to pause the proceedings to determine whether Holland was indeed fit. Even on direct appeal, Holland's attorney did not address his behavior in the statement of facts, and in two sentences curtly stated the evidence was sufficient and there were no appealable issues. (C. Supp. V3.18) Yet considering the factors highlighted in *Hanson*, including Holland's documented mental health issues and his behavior at trial and sentencing, the record sufficiently raises a *bona fide* doubt that Holland not only had difficulties assisting in his defense at trial, but also acted in a manner

-26-

that indicated he did not understand the proceedings. *See, e.g., People v. Chambers*, 36 Ill. App. 3d 838, 843-44 (1st Dist. 1976) (court found *bona fide* doubt of fitness where defendant had a history of mental illness, interrupted the proceedings, and gave contradictory testimony); *and also People v. Davenport*, 92 Ill. App. 3d 244, 246-47 (1st Dist. 1980) (court found *bona fide* doubt of fitness where defendant had a history of mental illness, difficulties consulting with defense counsel, made outbursts during testimony, and presented unhelpful evidence).

Although the issue of Holland's fitness was not litigated in the second stage post-conviction proceedings, fundamental fairness demands that this most basic requirement of due process be addressed by this Court, as the court did in *Britz*. A conviction and sentence against someone who is unfit cannot stand, and when a *bona fide* issue of fitness is raised, the court should not ignore it. Therefore, Holland respectfully requests that this Court find that a *bona fide* doubt of Holland's fitness is raised, and remand this cause for further proceedings to determine whether he was fit at the time of his trial and sentencing.

## II. Post-conviction counsel failed to provide reasonable assistance by not amending Holland's petition to include readily apparent facts in the record regarding his competency, so as to set forth a substantial constitutional claim.

Despite the fact that relevant portions of the record revealed several facts that cast substantial doubt on Holland's fitness, post-conviction counsel failed not only to amend the petition to include a claim concerning Holland's fitness, but counsel also failed to amend Holland's claims of ineffective assistance of trial and appellate counsel to assert their incompetency for not raising the issue of Holland's fitness as well. In light of Holland's allegation that his appellate counsel was ineffective, post-conviction counsel was required to review the record for issues that appellate counsel neglected to raise. As discussed above, trial counsel presented information at sentencing regarding Holland's long-standing and severe mental health problems and his current degenerating neurological condition, including the onset of dementia. (TR. V.2 E.92-93, 100-02) Moreover, Holland was removed from the courtroom during the capital sentencing hearing due to his disruptive behavior, and did not appear to understand the gravity of the proceedings he was facing. (TR. V.2 E.102-03) Despite these facts, clearly set out in the record, post-conviction counsel failed to include them as a basis to both amend the petition with a claim related to Holland's competency and support Holland's stated claims of ineffective assistance.

Post-conviction counsel's failure to amend Holland's petition, with readily available facts in the record that related to severe mental health and neurological problems, constituted unreasonable assistance. The Post-Conviction Hearing Act allows for the appointment of counsel to assist the

-28-

petitioner in the presentation of his petition. 725 ILCS 5/122-4 (West. 2006). Once a court appoints counsel to represent a petitioner in a post-conviction proceeding, appointed counsel must provide a reasonable level of assistance. *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006). Counsel is required to consult with the petitioner to ascertain the claims raised in the petition, examine the record based on the claims raised in the petition, and make any necessary amendments to the petition. Ill. Sup. Ct. Rule 651(c); *see People v. Davis*, 156 Ill. 2d 149, 164 (1993) (counsel is required to investigate and present petitioner's claims). Whether counsel failed to provide the petitioner with reasonable assistance, as required by Supreme Court Rule 651(c), is reviewed *de novo*. *People v. Suarez*, 224 Ill. 2d 37, 41-42 (2007). Counsel's failure to provide the petitioner with reasonable assistance requires a remand for further proceedings, whether the merits of the petition would require an evidentiary hearing or not. *People v. Turner*, 187 Ill. 2d 406, 415-16 (1999).

Although post-conviction counsel is not required to amend the petition in all cases, post-conviction counsel is required to make those amendments that are necessary to ensure the adequate presentation of the petitioner's claims. Ill. Sup. Ct. Rule 651(c); *see Turner*, 187 Ill. 2d at 412. Post-conviction counsel renders unreasonable assistance when a routine amendment to a petition would prevent dismissal of a petition, such as re-framing the defendant's claim to avoid dismissal. *Turner*, 187 Ill. 2d at 413-15. Similarly, it is unreasonable for post-conviction counsel not to amend a petition if the pertinent portions of the record reveal facts that would allow for the addition of claims related to the petitioner's stated claims. *People v. Jennings*, 345 Ill. App. 3d 265, 272 (4th

Dist. 2003).

For example, in the case of *People v. Turner*, post-conviction counsel unreasonably failed to frame the defendant's petition in a way that would have avoided dismissal. *Turner*, 187 Ill. 2d at 413-15. The defendant's petition alleged several claims, including that the State had withheld relevant evidence and that his trial counsel was ineffective for not discovering the withheld evidence to impeach the State's witnesses. *Id.* at 409. Post-conviction counsel made no amendments to the petition, and the court granted the State's motion to dismiss the petition based on waiver, as the issues identified by the petition were available in the record and direct appeal counsel failed to raise them. *Id.* at 412-13. The appellate court found that post-conviction counsel easily could have avoided the procedural bar of waiver by re-framing defendant's stated claims into a claim of ineffective assistance of appellate counsel. *Id.* at 413-14. Post-conviction counsel's failure to make this amendment, when it did not involve taking steps beyond what the duties of the Post-Conviction Hearing Act required, was unreasonable. *Id.* at 413-15.

Similarly, when a petition outlines the basis of a claim and the facts in the record would provide ample support for a related claim, post-conviction counsel must amend the petition to provide a reasonable level of assistance. For example, in the case of *People v. Jennings*, the appellate court found that post-conviction counsel not only failed to add facts to support the defendant's petition, but also failed to allege an additional claim that was within the bounds of the challenges raised in the *pro se* petition. *Jennings*, 345 Ill. App .3d at 272-75. In his petition, the defendant alleged ineffective assistance of trial

counsel for not filing a motion to reconsider sentence and a notice of appeal. *Jennings*, 345 Ill. App. 3d at 270. Post-conviction counsel did amend the petition, but merely added letters and affidavits that established trial counsel's delay in responding to the defendant's request for an appeal and trial counsel's belief that an appeal would be fruitless. *Id.* The court dismissed the petition without an evidentiary hearing. *Id.*

On appeal, the court found that post-conviction counsel should have amended the petition to include grounds that trial counsel could have raised in a motion challenging the sentence, in order to support the defendant's petition. *Id.* at 272-75. The court found that post-conviction counsel not only had plenty of time to make the amendments, but adding grounds that trial counsel could have raised was easy, considering the facts to support those grounds were clearly available in the relevant portions of the record. *Id.* at 273-74. In addition, one of the letters from the trial counsel that post-conviction counsel did include suggested that similarly situated co-defendants had received different sentences because they were sentenced by different judges. *Id.* at 274-75. Based on the available facts, the court found it was unreasonable for post-conviction counsel not to include a disparate sentence claim. *Id.* Although the defendant did not explicitly raise a claim of disparate sentencing, the court nevertheless noted that such a claim was clearly related to the defendant's stated claim challenging his sentence. *Id.* The court acknowledged that post-conviction counsel are not required to "comb through the entire record" to discern possible claims, but such a step was not necessary in this case. *Id.* at 274. The facts contained in the relevant portions of the record were sufficient

for post-conviction counsel to raise the claim, and no additional investigation was necessary. *Jennings*, 345 Ill. App. 3d at 274.

Here, Holland's stated claims created a reasonable duty on post-conviction counsel to review both the trial and sentencing hearing, and amend the petition to address the issue of Holland's fitness at trial and sentencing. Holland's *pro se* post-conviction petition alleged that his appellate counsel was incompetent for waiving several key issues. (PC. 23) Some of the issues that Holland raised in his petition referenced his capital sentencing hearing, including the fact that prosecutor improperly sought the death penalty and used improper evidence relating to his criminal background, which was discussed thoroughly at his sentencing hearing. (PC. 14, 45-46) Therefore, it was entirely within post-conviction counsel's duty to review not only the trial, but the sentencing hearing as well, as it was relevant to Holland's stated claims.

If post-conviction counsel had done so, he would have been confronted with a plethora of evidence alerting him to substantial issues regarding Holland's fitness, which should have induced him to amend Holland's petition to assert such claims. Similar to the case in *Jennings*, it was not necessary for Holland's post-conviction counsel to "comb through the record" to find the facts relevant to this claim. Even a cursory review of the capital sentencing hearing reveals Holland's irrational behavior in the past and in the courtroom, his long-standing extreme mental and emotional disturbances, as well as the onset of other neurological problems. (TR. V.2 E.92-111) Moreover, facts before the trial referenced in Holland's post-conviction petition and his testimony

suggested not only his inability to work his attorney, but his lack of understanding of what would constitute a defense to the murder charge. (TR. V2. C.42-44; PC. 39-40) Holland's appellate counsel did not mention or address any of these facts on direct appeal. (C. Supp. V3.5-18)

The absence of any attention by Holland's prior counsel to these facts, contained in relevant portions of the record, created a reasonable obligation on post-conviction counsel to amend Holland's petition. As in *Jennings*, where the court found it unreasonable not to amend the petition with a claim related to the defendant's stated claims, it was unreasonable for Holland's post-conviction counsel not to amend Holland's petition to raise an issue directly related to Holland's competency. Even though Holland did not explicitly raise an issue of his own fitness, he did raise claims that relate to his denial of a fair trial and due process, and that made it unreasonable for post-conviction counsel not to amend the petition to include a claim related to Holland's competency. Moreover, as argued in Part I, the issue of a defendant's fitness is fundamental to due process. Similar to *Turner*, post-conviction counsel was also unreasonable for alternatively not couching the issue of Holland's competency in terms of trial and direct appeal counsel's ineffectiveness for failing to raise the fitness issue. *See Williamson v. Ward*, 110 F.3d 1508, 1517-18 (10th Cir. 1997) (finding ineffective assistance of counsel for not pursing the issue of fitness when trial counsel's client had a long history of mental illness).

However, as in *Jennings*, even though post-conviction counsel had plenty of time to amend the petition and the facts were readily available to him, Holland's post-conviction counsel did not make any amendments to the petition.

At one point, Holland's post-conviction counsel asked the court for additional time because he was in the process of writing a supplemental petition, and the court freely granted post-conviction counsel more time. (PR. U.3) Despite the additional time, no amendments were made and post-conviction counsel simply rested on Holland's *pro se* petition. (PC. 62; PR. W.3) Just as post-conviction counsel acted unreasonably in *Jennings* in failing to amend the defendant's *pro se* petition, here, too, counsel did not provide reasonable assistance to Holland because he failed to amend the petition to include claims relating to Holland's fitness, as well as trial and appellate counsel's failure to raise such a claim.

Considering the claims Holland raised in his petition and that facts were available in relevant portions of the record to support those claims, Holland's post-conviction counsel acted unreasonably when he failed to make the necessary amendments to Holland's *pro se* petition to adequately present the substantial violations of his constitutional rights. Therefore, this Court should remand this cause so post-conviction counsel can make the necessary amendments in compliance with his duties under Supreme Court Rule 651(c).

## CONCLUSION

For the foregoing reasons, William Holland, Petitioner-Appellant, respectfully requests that this Court remand this cause for further proceedings to determine whether Holland was fit at the time of his trial and sentencing. In the alternative, this Court should remand for further second-stage proceedings due to the failure of post-conviction counsel to amend Holland's petition to include claims relating to Holland's fitness at trial and sentencing, and the failure of his trial and direct appeal counsel to raise such claims.

Respectfully submitted,

PATRICIA UNSINN
Deputy Defender

MICHAEL G. SOUKUP
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472

COUNSEL FOR PETITIONER-APPELLANT

## CERTIFICATE OF COMPLIANCE

I, Michael G. Soukup, certify that this brief conforms to the requirements of Supreme Court Rule 341(a) and (b). The length of this brief, excluding pages containing the Rule 341(d) cover, the Rule 341(h)(1) statement of points and authorities, the Rule 341(c) certificate of compliance, the certificate of service, and those matters to be appended to the brief under Rule 342(a) is 35 pages.

MICHAEL G. SOUKUP
Assistant Appellate Defender

No. 1-07-3242

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois |
| Respondent-Appellee, | ) | |
| | ) | |
| -vs- | ) | 99 CR 4981 |
| | ) | |
| WILLIAM HOLLAND, | ) | Honorable |
| | ) | Dennis A. Dernbach, |
| Petitioner-Appellant. | ) | Judge Presiding. |

## REPLY BRIEF AND ARGUMENT FOR PETITIONER-APPELLANT

I.   **Fundamental fairness demands that this cause be remanded for the post-conviction court to determine whether Holland was fit at the time of trial and sentencing, considering that his long history of severe mental illness, the onset of dementia, and his outbursts during sentencing raise a *bona fide* doubt of his competency, depriving him of due process.**

The State argues that this Court cannot even reach the question of whether the trial record in this case evidences a *bona fide* doubt of William Holland's fitness due to procedural bars. Moreover, the State argues that even if this Court could reach the question, Holland's behavior at trial "was rational in every way," a doctor's finding years earlier that he was insane is "wholly irrelevant," and Dr. Heinrich's report about Holland's extreme mental and emotional disturbances is not applicable to the question of fitness. (St. Br. 24, 26, 33-34) The State's position ignores the fact that a defendant's fitness to stand trial is a fundamental and necessary part of due process, so a claim

regarding fitness cannot be dispensed with on mere procedural grounds. *See Drope v. Missouri*, 420 U.S. 162, 171-72 (1975); *and see People v. Elsholtz*, 136 Ill. App. 3d 209, 211 (2nd Dist. 1985). Moreover, the record shows a connection between Holland's severe mental health issues and his ability to understand the proceedings, which raises a *bona fide* doubt that Holland may not have been fit at the time judgment was entered against him. Therefore, this Court should remand for further proceedings on the question of fitness.

As a preliminary matter, the State repeatedly refers to the failure of Holland to raise his fitness claim earlier as "wavier." (St. Br. 19-22, 24) However, waiver refers to the voluntary relinquishment of a known right. *Hill v. Cowan*, 202 Ill. 2d 151, 158-59 (2002). There is nothing in the record to indicate that Holland knowingly waived his right to be fit to stand trial, even assuming the right could be waived. The criminal justice system cannot tolerate the prosecution of an individual who is unfit. *See Drope*, 420 U.S. at 171-72; *and see Elsholtz*, 136 Ill. App. 3d at 211. In addition, an unfit individual, by definition, cannot knowingly and intelligently waive any of his rights. *See Pate v. Robinson*, 383 U.S. 375, 384 (1966) (". . . it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial."). Therefore, the State's reliance on waiver is entirely misplaced.

Instead, the issue is whether a defendant can procedurally forfeit a claim that he was unfit. *See People v. Blair*, 215 Ill. 2d 427, 443-44 (2005) (forfeiture refers to claims that could have been raised, but were not). Specifically, the issue is whether the absence of any claim of unfitness at trial or sentencing, on

-2-

direct appeal, or in Holland's post-conviction petition, bars this Court from consideration of whether an essential requirement of his criminal proceeding was met. Appellant acknowledges the rule that bars raising a claim for the first time on appeal. *People v. Jones*, 213 Ill. 2d 498, 505 (2004). Appellant also acknowledges this Court does not possesses supervisory powers to lift that bar, and does not ask this Court to find that it does. *See Jones*, 213 Ill. 2d at 507-08. However, depending on the nature of the claim, it is permissible to consider certain claims raised for the first time on appeal, contrary to the characterization by the State that successive petitions are the only method. For example, orders by the trial court that lack statutory authority may be reviewed although not raised in the trial court below, because when the court lacks authority to act its decision may be void. *See People v. Thompson*, 209 Ill. 2d 19, 24-25 (2004). Fundamental fairness is also a recognized exception to raising a claim that could have been raised in an earlier proceeding. *See People v. Pitsonbarger*, 205 Ill. 2d 444, 458 (2002); *People v. Perruquet*, 181 Ill. App. 3d 660, 663 (5th Dist. 1989) (an argument that a judgment may be void requires consideration under the principle of fundamental fairness).

The State argues that a fitness claim does not meet any exception to the general rule of forfeiture, and may not be considered under the rubric of fundamental fairness. (St. Br. 20-22) But the requirement that an accused person must be fit before standing trial, perhaps more than any other principle of due process, meets the definition of fundamental fairness. If Holland was not fit, the court had no authority to enter a judgment against him, given the fundamental necessity that a defendant must be fit before the State may

prosecute him. A long-held principle of the criminal justice system is the rule barring prosecution of an individual who, due to a mental condition, cannot understand the nature of the proceedings against him or consult with his counsel for assistance with his defense. *Drope*, 420 U.S. at 171-72 (the prohibition against the prosecution of an unfit defendant, who is tantamount to an absent defendant, is "fundamental to an adversary system of justice"); *People v. Reeves*, 412 Ill. 555, 561 (1952) (the requirement that the defendant must be fit "is as old as our concept of liberty"); *People v. Rockamann*, 79 Ill. App. 3d 575, 582 (5th Dist. 1979) ("Surely nothing could deprecate a defendant's substantial rights more than to be tried when he was not fit to stand trial in the first place."). Given the fundamental nature of this requirement, the trial proceedings may be rendered void because a court lacks the power to permit the prosecution of an unfit individual. *Elsholtz*, 136 Ill. App. 3d at 211 ("Trial of a defendant is . . . not independent of, but rather totally dependent on, a defendant's fitness."); *People v. Turner*, 111 Ill. App. 3d 358, 361 (2nd Dist. 1982) (a court may lack jurisdiction to enter judgments against an unfit defendant). Therefore, despite raising the claim for the first time on appeal, Appellant argues that fundamental fairness demands consideration of the issue on the merits. *See Rockamann*, 79 Ill. App. 3d at 582 (allowing forfeiture of a fitness claim raised on direct appeal "would be a travesty of justice"). Otherwise, the procedural bar would in effect sanction this unacceptable prosecution.

The State contends that Appellant's reliance on *People v. Britz*, 174 Ill. 2d 163 (1996), for the principle that fitness is a narrow exception for raising

claims for the first time on appeal, was rejected in *People v. Holman*, 191 Ill. 2d 204 (2000). (St. Br. 21)  However, *Holman* never addressed the question of raising a claim for the first time on appeal.  Unlike the instant case, the petitioner in *Holman* explicitly argued in the circuit court that his medication required an automatic fitness hearing. *Holman*, 191 Ill. 2d at 207-08, 211. Thus, whether fitness could be considered for the first time on appeal was not at issue, and *Holman* did not reject that reasoning of the *Britz* decision.

In addition, the State contends that *Holman* also stands for the proposition that the only method for raising a fitness claim in a collateral proceeding is to argue the error in terms of ineffective assistance of counsel based on information outside the record. (St. Br. 22)  The Illinois Supreme Court did hold that a challenge to counsel's effectiveness was the petitioner's only viable claim remaining, but that holding was not meant to address other cases, as the State attempts to do here. The petitioner in *Holman* argued that medication taken during his trial entitled him to a hearing, which was rejected by the Court, as well as the argument that his attorney rendered ineffective assistance by not requesting a hearing. *Holman*, 191 Ill. 2d at 207-08, 211. Without the medication issue, the petitioner only argued that his attorneys failed to request a hearing. *Id.* at 211. The petitioner never alleged an outright claim that he was tried and sentenced while unfit, as Holland does here. Therefore, the State's contention that Holland's fitness claim must be presented within a claim of ineffective assistance of counsel based on information outside the record fails.

Holland's claim strikes at the fundamental concern that he was not fit,

not merely that counsel failed to act. Given the importance of fitness, the responsibility for assuring a defendant is fit does not fall solely on counsel's shoulder, but it is shared by the trial judge as well. *People v. Sandham*, 174 Ill. 2d 379, 382 (1996). Therefore, the failure to ensure this requirement was met is not simply a question of whether his counsel provided effective assistance, but is an error that may void the entire proceedings. *Turner*, 111 Ill. App. 3d at 361.

On the merits, the State engages in a process of divide and conquer to conclude that there was nothing to show that Holland met the definition of unfitness. The State contends that Holland's mental health diagnoses and outbursts at trial have no connection to his ability to understand the proceedings and assist in his defense. (St. Br. 33) The State reaches this conclusion through a mechanical application of the factors described in *People v. Hanson*, which include the defendant's behavior and demeanor at trial, counsel's statements regarding the defendant's competence, and any prior medical opinions on defendant's fitness. *See People v. Hanson*, 212 Ill. 2d 212, 223 (2004).

Appellant acknowledges the relevance of these factors, but they are not exclusive prongs of a test that must be met to determine whether a *bona fide* doubt was raised. Instead, whether the record raises a *bona fide* doubt involves a case-specific inquiry that includes consideration of various factors whose importance may illustrate themselves differently in any individual case. *People v. Eddmonds*, 143 Ill. 2d 501, 518 (1991), *quoting Drope*, 420 U.S. at 180 ("there are 'no fixed or immutable signs which invariably indicate the need for further

inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated.'").

Accordingly, taking together the concerns of Holland's extreme mental disturbances, history of mental illness, and his behavior inside and outside the courtroom, a palpable concern about Holland's understanding of the trial proceedings and his ability to assist in his own defense emerged, and this concern warrants further proceedings.

The State contends that there is no connection between Holland's diagnoses and his ability to understand the proceedings and assist in his defense. (St. Br. 33) However, Dr. Heinrich's conclusions, when considered in the context of Holland's behavior at trial, show that Holland's mental health problems could have rendered him unfit.[1] Dr. Heinrich concluded that Holland currently suffered from three specific mental disorders: bipolar disorder; paranoid personality disorder; and dementia. (TR. V.2 E.101-02, 109-10). These specific diagnoses, according to the Diagnostic and Statistical Manual of Mental Disorders, carry with them the possibility of interference with the individual's ability to understand and work with others.[2] American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV) 150, 690-92 (4th ed. 2000). For example, individuals with dementia may be

[1]Despite continuing efforts to locate Dr. Heinrich's report, which was submitted into evidence at the sentencing hearing, Appellant has not been able to locate it.

[2]This Court may consider a scholarly authority on appeal, including the Diagnostic and Statistical Manual of Mental Disorders, fourth edition (DSM-IV), even though it was not made part of the record. *People v. Whilhoite*, 228 Ill. App. 3d 12, 23 (1st Dist. 1991).

especially vulnerable to physical and psychological stressors, which may exacerbate their intellectual deficits and other associated problems. DSM-IV at 150. Although there are specific types of dementia, invariably there are abnormalities in cognitive and memory functioning. *Id.* Therefore, Dr. Heinrich's diagnoses suggest that Holland's mental health status at the time of trial could directly inhibit his ability to understand the proceedings.

The State also attempts to dismiss the prior finding that Holland was insane by arguing that the "triple hearsay diagnoses of some personality disorder from some 23-24 years prior to his trial is wholly irrelevant due to its remoteness." (St. Br. 34) Contrary to the State's contention, the conclusions reached by the doctors years before at an earlier criminal proceeding are relevant to the seriousness and immutability of Holland's mental health issues. While an individual's mental health history alone does not constitute a *bona fide* doubt, it is clearly relevant to fitness. *See Pate v. Robinson*, 383 U.S. at 385-86 (mental alertness during colloquies did not justify ignoring the defendant's history of pronounced irrational behavior). As the judge noted in his ruling, two psychiatrists concluded that Holland suffered from paranoid personality disorder, consistent with Dr. Heinrich's current assessment, and one of those doctors found Holland insane. (TR. V.2 E.110) A finding of insanity is not merely an extreme mental health disturbance, but determination that the individual lacks fitness. The earlier finding that Holland was insane shows that the severe mental health problems Dr. Heinrich found were nothing new, and suggest that they never ceased, which only heightens the need for a specific inquiry into fitness.

In the context of these scientific conclusions about Holland's mental health history and status at the time of trial, Holland's behavior suggests these mental health issues may have manifested themselves to the point of inhibiting his understanding of the proceedings. The State argues that Holland's behavior and demeanor at trial "was rational in everyway." (St. Br. 26) The State supports this argument with the fact that Holland indicated that he understood certain rights that he waived during a colloquy with the judge, made no outbursts during trial, and testified appropriately. (St. Br. 26-28) However, examples of mental alertness, verbal understanding during colloquies, and the absence of outbursts during some portions of the trial, are no justification for ignoring other concerns. *See Pate v. Robinson*, 383 U.S. at 385-86 (while trial demeanor is relevant for whether a judge should hold a fitness hearing, it cannot be used to dispense with a hearing on that very issue). For example, although the State characterizes Holland's behavior during the testimony at the sentencing as appropriate, the State acknowledges that Holland also waved at the State's witnesses. (St. Br. 28) While the State contends that Holland's later outbursts simply reflected his anger over the situation, waving at adversarial witnesses at a death-penalty hearing suggests that Holland was not simply angry with his situation, but that his extreme mental and emotional disturbances may have caused a detachment from the proceedings.

Most indicative that Holland's mental health issues may have rendered Holland unfit for sentencing is his outburst during the hearing that led to his removal from the courtroom. The outburst was not merely disruptive, but Holland spoke out repeatedly despite several warnings from the judge. (TR.

V.2 E.95-98, 102-03) Moreover, Holland's statements were not simply vocal frustration, but incorrect statements about the proceedings around him. Holland told the judge, "what can you do to me," and stated that, "I'm here looking at for the next 40 to 60 years." (TR. V.2 E.96, 103) Holland also told the judge "I'll get my chance to argue," as the judge reminded him that actually, "your attorney will have a chance to argue." (TR. V.2 E.95-96) These outbursts do not indicate, especially in the context of Dr. Heinrich's conclusions, that Holland was simply angry with his situation. Instead, they suggest that Holland's mental health disorders, which can exacerbate intellectual deficits and cause cognitive abnormalities, may have inhibited Holland's understanding of the situation to the point where he was not fit for prosecution. *See* DSM-IV at 150.

The State attempts to compare Holland's outburst to the one considered in the case of *People v. Easley*, 192 Ill. 2d 307 (2000), to argue that Holland's outburst was nothing more than simple frustration. (St. Br. 37-38) During the outburst in *Easley*, the defendant stated that he felt the proceedings were hopeless because his treatment by the criminal justice system was not fair. *Easley*, 192 Ill. 2d at 321-22. In contrast here, Holland's outbursts suggest a fundamental misunderstanding about the proceedings around him. The case of *People v. Shoreck* is illustrative. The defendant in *Shoreck*, who made a seemingly effective waiver of trial rights, asked for a mistrial because he did not testify and insisted that he "wasn't heard in court." *People v. Shoreck*, 384 Ill. App. 3d 904, 923 (2nd Dist. 2008). Similarly, Holland also complained that he was not being heard, despite the judge's several attempts to inform Holland

that his attorney would do the talking for him, and at the same time indicated that he was not facing the possibility of death or life in prison. Instead of stopping the proceedings, defense counsel assumed that Holland was simply upset with the situation and Holland's sentencing hearing continued. (TR. V.2 E.103-04) But considering an outburst that exposes a fundamental misunderstanding about the proceedings, in combination with a mental health background like Holland's, counsel's opinion that Holland was simply expressing his anger and frustration is not sufficient to overcome a *bona fide* doubt that Holland was fit for sentencing. Moreover, if counsel's surmise that Holland "knows he's never getting out" as the reason for Holland's outburst was accurate, that in itself reflects a serious misunderstanding on Holland's part as to the consequences he was facing. (TR. V.2 E.107) The issue was not merely how long a term of years he would serve, but rather, whether he should be put to death.

Finally, State isolates and diminishes the importance of other suggestions that Holland was unfit, such as Holland's *pro se* motion to remove defense counsel, his inadequate defense testimony, and his unusual past criminal behavior. (St. Br. 35-38) Appellant acknowledges that these instances do not on their own raise a *bona fide* doubt that Holland was not fit, but they further corroborate a connection between Holland's severe mental health problems and his ability to understand the proceedings, as argued in Appellant's opening brief. (Opening Br. 23-25) The cases cited by the State in response all involved situations where, unlike the instant case, there was not a coalescence of factors raising a *bona fide* doubt of fitness. *See People v.*

*Meyers*, 367 Ill. App. 3d 402, 412-13 (2nd Dist. 2006) (the court disagreed that defendant's rather implausible testimony raised a *bona fide* doubt, but there was also no outburst during trial); *and see People v. Simpson*, 204 Ill. 2d 536, 551 (2001) (the court found no *bona fide* doubt based on differences between the defendant and counsel regarding strategy, but that was the only basis considered by the court). Again, Holland's *pro se* motion, his testimony admitting he shot his wife when he saw she had no gun in her hand, and other criminal behavior, including throwing urine on a police officer, should be considered not in isolation, but within the context of Dr. Heinrich's findings and Holland's outbursts at sentencing.

A review of trial record shows that despite all these concerns, the fundamental requirement that Holland was fit to stand trial was not addressed. Given the importance of fitness, and the plethora of instances which raise the possibility that Holland's extreme mental and emotional problems rendered him unable to understand the proceedings, this Court should remand for further proceedings to determine Holland's fitness.

## II. Post-conviction counsel failed to provide reasonable assistance by not amending Holland's petition to include readily apparent facts in the record regarding his competency, so as to set forth a substantial constitutional claim.

The State argues that because there was no underlying merit to the fitness issue, post-conviction counsel did not fail to provide reasonable assistance in neglecting to raise the issue in an amended petition. (St. Br. 42) The State does not argue that even if there was merit to the fitness issue, post-conviction still provided reasonable assistance. Essentially, the State concedes that if record indicates that a *bona fide* doubt of Holland's fitness existed, counsel failed to provide reasonable assistance.

As addressed in Argument I, the record shows that a *bona fide* doubt did exist. As this is a meritorious issue of immense significance, Holland did not receive reasonable assistance when counsel allowed the issue of Holland's fitness to go unaddressed. Holland's outbursts and Dr. Heinrich's conclusions about his mental health are not isolated moments buried in the record, but occurred during his death-penalty hearing. (TR. V.2 E.95-110) Holland's petition raised several issues regarding his trial, and post-conviction counsel should have noticed these instances while reviewing the record. (PC. 14, 45-46)

The failure to amend the petition when an issue this fundamental emerges constitutes unreasonable assistance. *See People v. Jennings*, 345 Ill. App. 3d 265, 273-75 (4th Dist. 2003). Therefore, this Court should remand for further post-conviction proceedings to allow Holland's post-conviction counsel to amend Holland's petition raising a claim regarding his fitness at the time of trial and sentencing.

## CONCLUSION

For the foregoing reasons, William Holland, Petitioner-Appellant, respectfully requests that this Court remand this cause for further proceedings to determine whether Holland was fit at the time of his trial and sentencing. In the alternative, this Court should remand for further second-stage proceedings due to the failure of post-conviction counsel to amend Holland's petition to include claims relating to Holland's fitness at trial and sentencing, and the failure of his trial and direct appeal counsel to raise such claims.

Respectfully submitted,

PATRICIA UNSINN
Deputy Defender

MICHAEL G. SOUKUP
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472

COUNSEL FOR PETITIONER-APPELLANT

# CERTIFICATE OF COMPLIANCE

I, Michael G. Soukup, certify that this reply brief conforms to the requirements of Supreme Court Rule 341(a) and (b). The length of this reply brief, excluding pages containing the Rule 341(d) cover and the Rule 341(c) certificate of compliance is fourteen pages.

MICHAEL G. SOUKUP
Assistant Appellate Defender

No.

IN THE

SUPREME COURT OF ILLINOIS

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, ) | Petition for Leave to Appeal from |
| ) | the Appellate Court of Illinois, |
| Respondent-Appellee, ) | First Judicial District No. 07-3242 |
| ) | |
| ) | There heard on Appeal from the |
| -vs- ) | Circuit Court of Cook County, |
| ) | Illinois No. 99 CR 4981. |
| ) | |
| WILLIAM HOLLAND, ) | Honorable |
| ) | Dennis A. Dernbach, |
| Petitioner-Appellant. ) | Judge Presiding. |

## PETITION FOR LEAVE TO APPEAL

## PRAYER FOR LEAVE TO APPEAL

William Holland, petitioner-appellant, hereby petitions this Court for leave to appeal, pursuant to Supreme Court Rules 315 and 612, from the judgment of the Appellate Court, First District, affirming the trial court's dismissal of his post-conviction petition challenging his conviction for first degree murder and his sentence of natural life imprisonment.

## PROCEEDINGS BELOW

The appellate court affirmed the dismissal of William Holland's post-conviction petition on December 31, 2009.  No petition for rehearing was filed. A copy of the appellate court's judgment is appended to this petition.

## COMPELLING REASONS FOR GRANTING REVIEW

For the first time on appeal from the dismissal of his post-conviction petition, Holland raised the claim that the trial record presented a substantial showing that Holland was not fit at the time of trial and sentencing. The appellate court refused to consider the issue on the merits, pursuant to this Court's opinion in *People v. Jones*, 213 Ill. 2d 498 (2005), which bars consideration of claims raised for the first time on appeal from dismissal of a post-conviction petition. Holland now urges this Court to consider whether a claim based on the fitness of the defendant should be subject to the rule in *Jones*.

The importance of fitness within the criminal justice system shows why procedural bars cannot deny consideration of a contention the defendant was unfit at the time of his prosecution. The bar against the prosecution of an unfit defendant is a long held principle, deeply rooted the United States and Illinois Constitutions. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2; *Drope v. Missouri*, 420 U.S. 162, 171-72 (1975); *People v. Reeves*, 412 Ill. 555, 561 (1952). Few rights are as fundamental to a criminal proceeding as the right for the defendant to be fit before he is prosecuted by the State. *People v. Rockamann*, 79 Ill. App. 3d 575, 582 (5th Dist. 1979). Even among those few fundamental rights critical to a criminal proceeding, fitness is one requirement that can never be dispensed with or excused. *People v. Elsholtz*, 136 Ill. App. 3d 209, 211 (2nd Dist. 1985). Thus, a conviction and sentence against a defendant, who is later determined to be unfit, cannot stand. *People v. Turner*, 111 Ill. App. 3d

358, 361 (2nd Dist. 1983) (a court may lack jurisdiction to enter judgments against an unfit defendant).

In accordance with these principles, due process demands that, if the record demonstrates a substantial showing that a defendant was not fit at the time of his prosecution, such a claim must be considered even if raised for the first time on appeal from dismissal of a post-conviction petition. Therefore, this Court should grant review to determine whether a defendant's claim that his conviction and sentence were rendered while he was unfit is subject to procedural default under *Jones*.

## STATEMENT OF FACTS

The State charged William Holland with first degree murder for shooting his wife Mattie Holland. (TC. 13-15) The State sought the death penalty on the basis that William shot Mattie while in violation of an order of protection. (TC. 31-32) Holland elected to waive his right to a jury, and a bench trial commenced on February 25, 2002. (TC. 42; TR. V1. A.3-6)

### Facts Adduced at Trial

Holland and his wife Mattie co-owned a lounge. (TR. V2. C.32) In January of 1999, an order of protection was issued that barred Holland from entering the lounge and approaching Mattie. (TR. V1. B.43) At Holland's jury trial, witnesses testified that the evening of January 22, 1999, while the order of protection was still in effect, Holland entered the lounge. (TR. V1. A.22-25, 51-58, 70-76, 87-92, 103-08, 123-30) Holland approached Mattie, took out a gun, and shot her multiple times. (TR. V1. A. 28-30, 51-58, 70-76, 87-92, 103-08, 123-30) Holland immediately left the lounge, and was apprehended by police shortly thereafter. (TR. V1. B.13-16) Holland told detectives that subsequent to the issuance of the order of protection he obtained a gun, and while he was upset, entered the lounge to confront Mattie. (TR. V1. B.44)

Holland testified that he did not intend to shoot Mattie when he entered the lounge. (TR. V2. C.26-27) When he observed Mattie, he noticed she had a gun in her pocket. (TR. V2. C.20-21) As he approached her, Ray Johnson attempted to intervene and stabbed him with a dart. (TR. V2. C.23-24) In

response, Holland shot the gun towards Johnson, and then shot towards Mattie. (TR. V2. C.25-26) However, Holland admitted on the stand that he did not see Mattie holding a gun when he began shooting her. (TR. V2. C.44)

After the parties rested, the judge found Holland guilty of first degree murder. (TR. V2. C.77-78)

## Sentencing

Holland waived his right to a jury for death penalty eligibility and sentencing. (TC. 42; TR. V1. A.3-6) The judge found Holland eligible for the death penalty on the basis that Mattie was the subject of an order of protection issued against Holland at the time Holland shot her. (TR. V.2 E.21)

For the capital sentencing hearing, the State presented several witnesses who testified about Holland's prior criminal behavior, which included charges of robbery, rape, and murder. (TR. V.2 E.25-32, 36-40, 54-56, 62-66) The State also called witnesses regarding Holland's behavior while incarcerated. (TR. V.2 E., 70-72, 74-77)

One witness was Officer David Harris, who placed Holland in the lockup the night of the shooting. (TR. V.2 E.45-47) Harris testified that Holland threw a cup of urine at him and stated, "Ha, ha, I got you." (TR. V.2 E.52) At the hearing, Holland waved as Harris identified him. (TR. V.2 E.45)

Another witness, correctional officer Antonio Sommerio, testified that on May 30, 2001, he was escorting another detainee to the dispensary within the Cook County Jail. (TR. V.2 E.74-77) As he did, Holland stepped up to Sommerio and punched him in the face. (TR. V.2 E.74-77) In court, the

prosecutor asked Sommerio to identify Holland. (TR. V.2 E.75) The prosecutor asked, "Is he the man, for the record, that's waving and smiling at you?" (TR. V.2 E.75) Sommerio replied, "Yes, he is." (TR. V.2 E.75)

For mitigation evidence, Holland's attorney presented a report by Dr. Larry Heinrich, an expert in the field of forensic psychology. (TR. V.2 E.92-93) Dr. Heinrich did not testify; instead, the parties stipulated to Dr. Heinrich's report.[1] (TR. V.2 E.92-93) Before trial, on August 27, 2001 and October 31, 2001, Dr. Heinrich had interviewed and evaluated Holland, including administering several psychological tests. (TR. V.2 E.92-93) Defense counsel tendered a copy of the report to the prosecution and the court. (TR. V.2 E.93)

The parties then presented argument. (TR. V.2 E.94, 100) As the prosecutor began to discuss Holland's background, Holland interrupted the proceedings. (TR. V.2 E.95) The prosecutor said, "not only is he a murderer, he's a rapist and he beats on officers," when Holland interrupted saying, "Why was I not convicted for rape? Why did she recant her statement?" (TR. V.2 E.95) The judge told Holland to keep his mouth shut and that his attorney would argue for him. (TR. V.2 E.95) Holland replied, "I'll get my chance to argue, Judge," and the judge told him again that his attorney would argue for him. (TR. V.2 E.95) Holland said, "I don't mind, you know," and the judge repeated his demand that Holland remain silent and that his attorney will do

---

[1]Despite continuing efforts to locate Dr. Heinrich's report, which was submitted into evidence at the sentencing hearing, Appellant has not been able to locate it.

the arguing. (TR. V.2 E.95-96) Holland replied, "What can you do to me? What can you do to me? I'm tired of hearing these lies." (TR. V.2 E.96) The judge told Holland again to be quiet and that his attorney will argue for him. (TR. V.2 E.96)

The prosecutor continued, but not long before Holland interrupted again. (TR. V.2 E.96) The prosecutor said that Holland beats on anyone who shows any type of authority and takes violence into his own hands. (TR. V.2 E.96) Holland said, "Yes, [you're] right. I will." (TR. V.2 E.96) The judge stopped Holland from continuing and Holland said, "I'm sorry, your Honor." (TR. V.2 E.96) The judge told Holland, "There are things I can do to you." (TR. V.2 E.96) Holland replied, "I know this. I know. But I wouldn't care, your Honor." (TR. V.2 E.96) The judge said, "Well that may be," and Holland replied, "With all due respect to you, though, but that's how I feel." (TR. V.2 E.96-97)

The prosecutor resumed his argument about Holland's background, but Holland interrupted again. (TR. V.2 E.97-98) The prosecutor listed Holland's prior crimes: the shooting of Mattie; the shooting of his ex-girlfriend; batteries on police officers and sheriffs; throwing urine on a police officer; and taking the police on a chase after the shooting. (TR. V.2 E.97) The prosecutor also mentioned that Holland, on the way home after the shooting, committed an armed robbery and tried to take a woman hostage at gunpoint. (TR. V.2 E.97) Holland interrupted saying, "And you're lying about that now too. I'm tired of that. That's not even in the report." (TR. V.2 E.97-98)

Defense counsel started her argument for mitigation by informing the court that Holland, currently and for a long time, suffered from severe mental

health disorders. (TR. V.2 E.100) Twenty years earlier, during Holland's 1980 trial for the attempted murder and aggravated battery of his ex-girlfriend, the State's psychiatrist found that Holland suffered from personality disorder. (TR. V.2 E.100-02) Dr. Heinrich concluded that Holland continued to suffer from paranoid personality disorder, but also found that Holland had long suffered from bipolar disorder as well. (TR. V.2 E.100-01) In addition, Dr. Heinrich found that Holland now suffered from dementia. (TR. V.2 E.101-02)

Defense counsel continued with her argument, but another disruption occurred. (TR. V.2 E.102) Holland commented about the behavior of the detectives who were present in the courtroom and may have rolled their eyes. (TR. V.2 E.102) The court said, "Mr. Holland I have told you --," Holland replied, "I know," and the court finished by saying, "-- you cannot speak." (TR. V.2 E.102-03) Then Holland said, "Well, you know I'm here looking at for the next 40 to 60 years." (TR. V.2 E.103) The court told Holland, "If you won't listen to me -- either be quiet or I'll have you removed from the courtroom. Okay. Take him out." (TR. V.2 E.103) Holland said, "Sorry, your honor." (TR. V.2 E.103) After Holland was removed, defense counsel asked the court to remove the detectives if they were going to roll their eyes, and the court said, "Mr. Holland's paranoid.  Let it go. [...] I saw no indications of any inappropriate behavior [by the detectives]..." (TR. V.2 E.103)

In his ruling, the judge noted certain portions of Dr. Heinrich's report and Holland's mental health history. (TR. V.2 E.108-11) Dr. Heinrich's report indicated that Holland suffered from extreme mental and emotional disturbances, including bipolar disorder, paranoid personality disorder, and

dementia. (TR. V.2 E.109-10) Dr. Heinrich also found that Holland was experiencing neurological and cerebral degeneration. (TR. V.2 E.110-11) The court also considered that during the 1980 trial one of doctors found Holland legally insane, and although the State's doctor disagreed, the State's doctor admitted that Holland did suffer from a personality disorder. (TR. V.2 E.110) The judge found that Holland, when confronted with situations he does not like, is unable to control his behavior. (TR. V.2 E.108-09) The judge concluded that Holland was totally incapable of being let back out of prison or put in any kind of society where he must deal with people. (TR. V.2 E.109)

Ultimately, based on Holland's mental disorders as well as his age and his physical health, the judge declined to sentence Holland to death. (TR. V.2 E.111) Instead, the judge sentenced Holland to a term of natural life imprisonment. (TR. V.2 E.111)

Direct Appeal

On direct appeal, the public defender filed a motion to withdraw as counsel pursuant to *Anders v. California*, 386 U.S. 738 (1967). (C. Supp. V3.2-18) Holland filed a *pro se* response arguing several grounds including prosecutorial misconduct, and ineffective assistance of trial and appellate counsel. (C. Supp. V2.2-3) The appellate court addressed Holland's claims, and concluded they lacked merit. (C. Supp. V2.3-5) The court allowed appellate counsel to withdraw and affirmed Holland's conviction and sentence. (C. Supp. V25); *People v. Holland*, No. 1-02-1881 (December 19, 2003) (unpublished order under Supreme Court Rule 23). The Illinois Supreme Court denied Holland's

petition for leave to appeal. *People v. Holland*, 209 Ill. 2d 590 (2004).

## Post-Conviction Proceedings

Holland filed a *pro se* post-conviction petition on September 8, 2004. (PC. 11-61) He argued that his Sixth Amendment rights were violated based on the United State's Supreme Court decision in *Blakely v. Washington*, 542 U.S. 296 (2004). (PC. 14-15) He also argued that the State improperly sought the death penalty, that his trial and appellate counsel rendered ineffective assistance, that the prosecutor committed misconduct, that the State failed to prove him guilty beyond a reasonable doubt, and that the trial court erred in denying his request prior to trial to change defense counsel. (PC. 16-24)

The trial court appointed Holland counsel, who filed a 651(c) certificate without amending Holland's petition. (PC. 62; PR. G., U.3, W.3) The State filed a motion to dismiss. (PC. 63-75; R. X.3) The State argued that *Blakely* was inapplicable because Holland waived his right to a jury, and the remaining claims should be dismissed either because of waiver or *res judicata*. (PC. 65-67) The court dismissed the petition, and Holland filed this appeal. (PR. Y.11-13; PC. 82-84)

## Appeal from Dismissal of Post-Conviction Petition

On appeal, Holland asserted for the first time that a *bona fide* doubt existed as to whether he was fit during the trial proceedings. *People v. Holland*, No. 1-07-3242 (Rule 23 Order, December 31, 2009) (Order at 5). The appellate court concluded that it had no power to reach Holland's claims due

to procedural bars.  Order at 6-7.  The court reasoned:

> "Jones makes clear that the supreme court alone has the power to set
> aside a procedural default to reach the merits of a postconviction claim
> raised for the first time on appeal under its supervisory authority, a
> power that this court lacks. . .[t]hus, defendant's claim is procedurally
> defaulted and we cannot address it."

Order at 7.

This petition for leave to appeal now follows.

# ARGUMENT

**Where a defendant's fitness to stand trial is an indispensable requirement of the most basic due process protections under both the Federal and Illinois Constitutions, a claim that a defendant was unfit while a judgment of conviction and sentence was rendered upon him cannot be subject to procedural default.**

On appeal from the dismissal of his post-conviction petition, Holland raised a new argument asserting that the proceedings leading to his conviction and sentence were fundamentally unfair. Holland argued that the trial record raised substantial doubts as to his fitness during these proceedings. *People v. Holland*, No. 1-07-3242 (Rule 23 Order, December 31, 2009) (Order at 5). Because fitness is an indispensable part of due process, Holland argued that his claim required consideration, even though it was not raised before. Applying the holding in *People v. Jones*, 213 Ill. 2d 498, 505 (2005), which bars raising a new issue on appeal from the dismissal of a post-conviction petition, the appellate court reasoned it was prohibited from deciding the issue. Order at 7. However, where the record shows that a defendant was unfit at the time of his prosecution, it constitutes a denial of due process for a court to decline consideration of the claim based merely on procedural grounds. The prosecution of an unfit defendant is so antithetical to basic principles of the criminal justice system, that such a claim cannot be subject to procedural default. This Court should accordingly grant leave to appeal, in order to clarify that rules of procedural default, such as the rule in *Jones*, do not apply to claims of unfitness.

The trial record sets forth several facts that demonstrate Holland's

unfitness during his prosecution. Defense counsel presented a report from forensic psychologist Dr. Heinrich for evidence in mitigation during the sentencing hearing. (TR. V.2 E.92-93) Dr. Heinrich concluded that Holland had long suffered from extreme mental and emotional disturbances, including bipolar disorder and paranoid personality disorder, and now suffered from dementia. (TR. V.2 E.100-02) Dr. Heinrich also concluded that Holland was experiencing neurological and cerebral degeneration. (TR. V.2 E.110-11) In reaching his conclusion, Dr. Heinrich considered a prior finding by one doctor in 1980 that Holland was legally insane. (TR. V.2 E.100-02) At trial, Holland essentially conceded his guilt on the stand. (TR. V2. C.42-44) Later, during the capital sentencing hearing, Holland waved at State's witnesses, spoke out multiple times, told the judge that he was only facing a term of years, and was eventually removed from the courtroom. (TR. V.2 E.45, 75, 95-98, 100-03) These facts constitute a compelling showing that Holland could not understanding the proceedings or assist in his defense. *See e.g. People v. Chambers*, 36 Ill. App. 3d 838, 843-44 (1st Dist. 1976) (court found *bona fide* doubt of fitness where defendant had a history of mental illness, interrupted the proceedings, and gave contradictory testimony); *and also People v. Davenport*, 92 Ill. App. 3d 244, 246-47 (1st Dist. 1980) (court found *bona fide* doubt of fitness where defendant had a history of mental illness, difficulties consulting with defense counsel, made outbursts during testimony, and presented unhelpful evidence).

Despite this showing, and the concern raised regarding the propriety of entering a conviction against Holland if he was unfit, the appellate court

declined to address the issue due to the procedural rule of *Jones*. Order at 7. In *Jones*, this Court held that under the Post-Conviction Hearing Act, any claim not included in the petition is considered waived. *Jones*, 213 Ill. 2d at 505; 725 ILCS 5/122-3 (West 2008). Likewise, any claim raised for the first time on appeal would also be subject to the procedural bar of waiver. *Jones*, 213 Ill. 2d at 505. Pursuant to this reasoning, the appellate court considered that only this Court had the power to consider Holland's fitness claim. Order at 7.

But Holland urges this Court to consider whether a claim of unfitness is of such a unique nature that it should not be subject to the procedural bar of *Jones*. Compared to other rights of a defendant, even those also deemed fundamental, the fitness of the defendant remains distinctly different. The bar against the prosecution of an individual who, due to a mental condition, cannot understand the nature of the proceedings against him or consult with his counsel for assistance with his defense, is a long-held principle of the criminal justice system. *People v. Reeves*, 412 Ill. 555, 561 (1952) (the requirement that the defendant must be fit "is as old as our concept of liberty"). There are few circumstances as antithetical to the integrity and fairness of the criminal justice system as the prosecution of a defendant who, for all practical purposes, is absent from the courtroom due to his mental condition. *Drope v. Missouri*, 420 U.S. 162, 171-72 (1975) (the prohibition against the prosecution of an unfit defendant, who is tantamount to an absent defendant, is "fundamental to an adversary system of justice"). Indeed, the appellate courts of this State have described the judgment and sentence against an unfit defendant as akin to a

-15-

void judgment. *People v. Elsholtz*, 136 Ill. App. 3d 209, 211 (2nd Dist. 1985). ("Trial of a defendant is . . . not independent of, but rather totally dependent on, a defendant's fitness."); *People v. Turner*, 111 Ill. App. 3d 358, 361 (2nd Dist. 1983) (a court may lack jurisdiction to enter judgments against an unfit defendant). Thus, a judgment rendered against an unfit individual cannot stand, and should accordingly be subject to attack at any time, including in the instant appeal, at the appellate court level. *See* 725 ILCS 5/104-11(a) (West 2008) (fitness can be raised at any appropriate time, even after trial); *and see People v. Rockamann*, 79 Ill. App. 3d 575, 582 (5th Dist. 1979) (allowing forfeiture of a fitness claim raised on direct appeal "would be a travesty of justice").

The appellate court concluded that instead of reaching the merits of the issue, Holland could file a successive post-conviction petition, wherein Holland must satisfy the "cause and prejudice" test. Order at 7-8. However, the unique nature of a fitness claims shows why a successive petition is not a sound alternative in the instant case. An unfit defendant, by definition, cannot understand criminal proceedings, which must necessarily include the duty to raise his claims in a timely and appropriate manner. *See* 725 ILCS 5/104-10 (West 2008). Moreover, due to the very nature of a mental condition that rises to the level of legal unfitness, a defendant may not believe he is or was unfit. *See People v. Baldwin*, 185 Ill. App. 3d 1079, 1086-87 (1st Dist. 1989) ("an incompetent defendant can hardly be accepted as a reliable witness to his own competency"). Therefore, it is both illogical and unfair to place upon an unfit defendant the burden of raising his own fitness issue in a successive petition.

*See Pate v. Robinson*, 383 U.S. 375, 384 (1966) (noting the contradiction of holding against an incompetent defendant a waiver of his right to competency). When a court is faced with the issue, as the appellate court was here, it should not dismiss the claim on procedural grounds and wait for the unfit defendant to raise it on his own.

For example, this Court in *People v. Brtiz*, 174 Ill. 2d 163 (1996), addressed the merits of a fitness issue even though the defendant did not assert it until his appeal from the summary dismissal of his post-conviction petition. *Britz*, 174 Ill. 2d at 193-95. Although the defendant in *Britz* asserted his claim on the basis of a statutory right to a fitness hearing due to his prescription of psychotropic medication, this Court concluded that the claim warranted consideration due to the fundamental importance of the issue. *Id.* at 194-95. Similarly, here, this Court should recognize that the procedural bar of *Jones* should also not apply to the appellate court when it faces a claim of unfitness.

Holland acknowledges that subsequent to *Britz* this Court held that a fitness issue can be subject to procedural default in *People v. Holman*, 191 Ill. 2d 204 (2000), but the nature of Holland's claim is distinguishable. In *Holman*, this Court considered the claim of a defendant who contended in a post-conviction petition that he was entitled to a fitness hearing because he took psychotropic medication at the time of the his trial. *Holman*, 191 Ill. 2d at 207-08, 211. Holman sought relief based on a statute that provided a defendant who took psychotropic the right to a fitness hearing. *Id.* at 211. The defendant in *Holman* did not support his claim of fitness any other way. *Id.* at 212. This Court concluded that where the defendant's fitness claim derived from a purely

statutory right, it was subject to procedural default. *Holman*, 191 Ill. 2d at 211-12.

In contrast, Holland does not assert that his claim of fitness turns on a statutory right. Instead, he claims that the record presents a sufficient showing that he was actually unfit at the time of trial and sentencing, not merely that he was denied a right provided only by the grace of the legislature. Holland's claim, therefore, derives from substantive due process, not merely procedural due process.

This Court in *People v. Tenner*, 206 Ill. 2d 381 (2003), considered a distinction recognized in federal courts between substantive and procedural claims of fitness, and their application to the doctrine of waiver. *Tenner*, 206 Ill. 2d at 394-95. In a successive post-conviction petition, the defendant in *Tenner* argued both that he was actually unfit and that the trial court failed to hold a fitness hearing. *Id.* at 393-95. The defendant sought to avoid the "cause and prejudice" test that a petitioner must meet for a successive petition by arguing that his fitness claim derived from substantive due process, which has been found not to be subject to procedural default in the federal system. *Id.* at 394-95. This Court declined to recognize this distinction, however, because the defendant had raised a similar substantive due process claim of actual unfitness in prior proceedings. *Id.* at 397-98. Thus, where defendant's fitness was already addressed, the claim was properly dismissed. *Id.* at 398.

Holland, who has never had his fitness addressed in any prior proceeding, contends that procedural default should not apply to his substantive due process claim of unfitness. The federal courts have long

recognized that a petitioner's claim of actual incompetence is not subject to procedural default. *Adams v. Wainwright*, 764 F. 2d 1356, 1359 (11th Cir. 1985). A petitioner who claims a State's procedural rules were incorrectly followed, or that a specific State actor erred, asserts a claim grounded in procedural due process. *James v. Singletary*, 957 F. 2d 1562, 1572 (11th Cir. 1992). Generally, these claims can be subject to wavier. *Medina v. Singletary*, 59 F. 3d 1095, 1106 (11th Cir. 1995). In contrast, the related claim that a petitioner is actually unfit while the State prosecuted him, raises a question of substantive due process, and is not subject to procedural default. *Id.* at 1107. The basis for the prohibition against procedural default of a substantive due process claim derives from the fundamental importance of fitness, and its role as an indispensable part of every criminal prosecution. *Adams*, 764 F. 2d at 1359, *citing Pate*, 383 U.S. at 384.

The reasoning of these federal decisions should apply to this Court's ruling in *Jones*. The record in this case, which was available to the circuit court and appellate court, raises sufficient facts to show that Holland was not fit at the time of prosecution. This claim, based on principles of substantive due process, requires consideration despite rules of procedural default. Therefore, Holland respectfully requests this Court grant appeal to determine whether the procedural bar in *Jones* can be used to bar consideration of a petitioner's substantive due process claim of unfitness.

## CONCLUSION

William Holland, petitioner-appellant, respectfully requests that this Court grant leave to appeal.

Respectfully submitted,

PATRICIA UNSINN
Deputy Defender

MICHAEL G. SOUKUP
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472

COUNSEL FOR PETITIONER-APPELLANT

**APPENDIX**

**Appellate Court Decision**

**NOTICE**
The text of this order may
be changed or corrected
prior to the time for filing of
a Petition for Rehearing or
the disposition of the same.

SECOND DIVISION
December 31, 2009

No. 1-07-3242

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| | ) | the Circuit Court |
| Plaintiff-Appellee; | ) | of Cook County. |
| | ) | |
| v. | ) | No. 99 CR 4981 |
| | ) | |
| WILLIAM HOLLAND, | ) | Honorable |
| | ) | Dennis A. Dernbach, |
| Defendant-Appellant. | ) | Judge Presiding. |

O R D E R

Defendant William Holland appeals from the order of the circuit court dismissing his

petition for relief under the Post-Conviction Hearing Act (the Act) (725 ILCS 5/122-1 *et seq.*

(West 2002)) at the second stage without granting an evidentiary hearing. For the following

reasons, we affirm.

Following a bench trial, defendant was convicted of first degree murder and sentenced to

life imprisonment. The relevant testimony at trial established that defendant approached his

wife, Mattie Jones-Holland, at the bar they owned and fatally shot her. During an interview with

police detectives after his arrest, defendant stated that he and Mattie had ongoing marital

problems and that she obtained an order of protection against him after he assaulted her.

*1*.

1-07-3242

Defendant also told detectives that he brought his gun with him to the bar, and when he saw Mattie, he got angry and shot her.

In his trial testimony, defendant stated that he was prohibited by the order of protection from entering the bar, but nevertheless went there to retrieve some belongings he stored there, including a gun. He testified that Mattie approached him at the bar and that she was holding a gun. Another patron then approached him and tried to stab him with a dart. Defendant testified that he shot at the patron and Mattie in self-defense. However, on cross-examination, defendant testified that Mattie did not have anything in her hands at the time he shot her.

The court rejected defendant's theory of self-defense and found him guilty of first degree murder. Because defendant killed Mattie while she had an order of protection against him, the court determined that he was eligible for the death penalty.

During the capital sentencing hearing, the State called witnesses to testify about defendant's prior arrests and convictions. A former detective testified that during the course of an investigation, he learned that defendant broke into a woman's home, raped her, and fell asleep in her bed. An assistant State's attorney who prosecuted defendant for aggravated battery and attempted murder testified that defendant called an ex-girlfriend and told her he was going to kill her. When defendant arrived at the woman's home, he shot the woman and two other people who lived there. A Chicago Housing Authority security guard testified that defendant robbed him, stole his gun, and attempted to abduct a woman standing nearby. Additionally, three officers testified that defendant assaulted them while in custody. When those officers identified defendant in court, he smiled and waved at them from the defense table.

2

1-07-3242

Defendant then presented evidence in mitigation. Defense counsel presented a report prepared by Dr. Larry Heinrich, a forensic psychologist who examined defendant. Heinrich did not testify at the hearing. The parties stipulated to the contents of the report, but the report is not included in the record on appeal.

During the sentencing hearing, defendant interrupted several times to comment on witnesses' testimony. The court instructed defendant to be quiet and ultimately had him removed from the courtroom. At one point, the court commented that defendant was being "paranoid" because he thought that a witness rolled his eyes during defense counsel's closing argument.

The court sentenced defendant to a term of natural life. The court noted that the Heinrich report was sufficient evidence to mitigate a death sentence. The court discussed the contents of the report, which concluded that defendant suffered from mental disorders, including bipolar disorder, paranoid personality disorder, and early dementia. The court also discussed two psychological examinations of defendant conducted before his aggravated battery trial 20 years earlier: one report concluded that defendant was "legally insane" and the other did not. However, the court noted, "there was a finding beyond a reasonable doubt that the defendant was sane at that time and not insane."

On direct appeal, the public defender representing defendant filed a motion for leave to withdraw under Anders v. California, 386 U.S. 738, 18 L. Ed. 2d 493, 87 S. Ct. 1396 (1967), stating that no issues of merit existed warranting argument on appeal. Defendant filed a response, arguing, *inter alia*, that his trial counsel provided ineffective assistance for failing to

1-07-3242

interview and call certain witnesses at trial. He also argued that his appellate counsel was ineffective because she was "incompetent" and never consulted with defendant.

We granted the public defender's motion to withdraw and affirmed defendant's conviction. People v. Holland, No. 1-02-1881 (December 19, 2003) (unpublished order under Supreme Court Rule 23). We specifically found that after "carefully review[ing] the record in this case, the aforesaid [Anders] brief, and defendant's response in compliance with the mandate of the Anders decision[, we] find no issues of arguable merit." People v. Holland, No. 1-02-1881 (December 19, 2003) (unpublished order under Supreme Court Rule 23).

Defendant subsequently filed a *pro se* petition for postconviction relief under the Act. In his petition, he reasserted his claim that his trial counsel was ineffective for failing to call exculpatory witnesses and for failing to preserve unspecified issues for appeal. He also claimed that a jury should have been empaneled to determine whether he was eligible for the death penalty. Defendant also asserted that the court abused its discretion in denying his "Motion for Appointment of Counsel Other Than Public Defender, " which he filed before trial. Additionally, he again claimed that the prosecutor engaged in misconduct for suppressing exculpatory evidence. Finally, he again claimed that appellate counsel was ineffective for filing an Anders brief, thereby "waiving" those appealable issues. He attached nine exhibits in support of his petition, including a copy of his 20-page *pro se* petition for leave to appeal to the supreme court, which was denied (People v. Holland, 209 Ill. 2d 590 (2004)).

The court appointed an assistant public defender to assist defendant in the postconviction proceedings. Postconviction counsel informed the court that he would file a supplemental

4

1-07-3242

petition. However, he ultimately did not do so and instead filed a certificate pursuant to
Supreme Court Rule 651(c) attesting to the following: (1) that he communicated with defendant
by letter, read defendant's *pro se* postconviction petition, and ascertained defendant's
deprivation of constitutional rights; (2) that he reviewed the transcripts; and (3) that the
postconviction petition adequately presented defendant's claims of constitutional deprivation.

The State filed a motion to dismiss defendant's petition, arguing that the claims were
barred by *res judicata* or waiver because they were or should have been raised on direct appeal.
The court agreed, finding that the issues of ineffective assistance of trial and appellate counsel
and prosecutorial misconduct were barred by *res judicata* because defendant raised them on
direct appeal. Furthermore, the court found that the remaining issues regarding defendant's
motion for appointment of counsel and empaneling a jury for his capital sentencing hearing were
waived because he should have raised them on direct appeal but failed to do so.

Defendant now appeals from the dismissal of his postconviction petition, but abandons
the arguments contained in the petition. Instead, he argues for the first time that he was denied a
fair trial because the court failed to order a hearing to determine defendant's fitness to stand trial.
He further contends he was denied reasonable assistance of postconviction counsel because
counsel failed to amend his *pro se* petition to assert the new claim.

The Act provides a mechanism by which a defendant may assert that his conviction or
sentence resulted from a substantial denial of his federal or state constitutional rights. 725 ILCS
5/122-1 *et seq.* (West 2002); People v. Hodges, 234 Ill. 2d 1, 9 (2009). To commence
proceedings under the Act, the defendant must file a petition in the circuit court which "clearly

1-07-3242

set[s] forth the respects in which petitioner's rights were violated." 725 ILCS 5/122-2 (West 2002); Hodges, 234 Ill. 2d at 9. A *pro se* litigant need only present the gist of a constitutional claim to survive summary dismissal of his petition at the first stage of postconviction proceedings. Hodges, 234 Ill. 2d at 9. If the petition is not summarily dismissed at the first stage, it proceeds to the second stage, where the court may appoint counsel for an indigent defendant. 725 ILCS 5/122-4 (West 2002); Hodges, 234 Ill. 2d at 10.

Section 122-3 of the Act provides that "[a]ny claim of substantial denial of constitutional rights not raised in the original or amended petition is waived." 725 ILCS 5/122-3 (West 2002). That is, a claim not raised in a postconviction petition cannot be argued for the first time on appeal. People v. Jones, 213 Ill. 2d 498, 505 (2004). Although in some cases this procedural default may be excused as a matter of fundamental fairness, only the supreme court possesses the supervisory authority to do so. Jones, 213 Ill. 2d at 506-07. As the supreme court has "repeatedly stressed, the appellate court does not possess the supervisory powers enjoyed by [the supreme] court and cannot, therefore, reach postconviction claims not raised in the initial petition." Jones, 213 Ill. 2d at 507.

Here, defendant acknowledged that he raised the argument that his constitutional rights were violated for failure to receive a fitness hearing for the first time on appeal, and concedes that it is forfeited. However, he argues that we should address his claim notwithstanding the procedural default as a matter of fundamental fairness, relying on People v. Coulter, 352 Ill. App. 3d 151, 156 (2004). We decline to follow Coulter in this case. Although Coulter ostensibly supports this court's authority to set aside a procedural default in the interest of

6

1-07-3242

fundamental fairness, it relies on People v. De La Paz, 204 Ill. 2d 426, 432 (2003), for that

proposition. Nevertheless, in Jones, the supreme court clarified that it did not set aside the

procedural default as a matter of fundamental fairness in De La Paz. Jones, 213 Ill. 2d at 506.

Rather, it addressed the merits of the argument because the State forfeited the procedural default

argument. De La Paz, 204 Ill. 2d at 433; see also Jones, 213 Ill. 2d at 506. The court further

noted that even if the State had not forfeited the argument in De La Paz, it would have addressed

the merits of the issue under its supervisory authority because of the "extraordinary"

circumstances involved in that case. Jones, 213 Ill. 2d at 506-07.

In any event, Jones makes clear that the supreme court alone has the power to set aside a

procedural default to reach the merits of a postconviction claim raised for the first time on appeal

under its supervisory authority, a power that this court lacks. Jones, 213 Ill. 2d at 507 ("[o]ur

detailed discussion of this issue is intended to stress that our appellate court is not free, as [the

supreme] court is under its supervisory authority, to excuse, in the context of postconviction

proceedings, an appellate waiver caused by the failure of a defendant to include issues in his or

her postconviction petition"). In fact, the supreme court recently reversed the opinion of the

Second District Appellate Court after it addressed a newly-presented argument raised in a similar

fashion, noting that the court "ignored established principles of procedural default." People v.

Pendleton, 223 Ill. 2d 458, 471 (2006). Thus, defendant's claim is procedurally defaulted and

we cannot address it. See Pendleton, 223 Ill. 2d at 475.

That is not to say that defendant is without recourse. However, he may only present his

new claim of constitutional deprivation in a successive postconviction petition filed in the circuit

1-07-3242

court in accordance with the "cause and prejudice" guidelines set forth in <u>People v. Pitsonbarger,</u> 205 Ill. 2d 444 (2004). <u>Pendleton,</u> 223 Ill. 2d at 476. Under that test, defendant must demonstrate "cause" for failing to raise the error in a prior proceeding, and actual "prejudice" resulting from the claimed error. <u>Pendleton,</u> 223 Ill. 2d at 476; <u>People v. Jones,</u> 211 Ill. 2d 140, 148-49 (2004).

Defendant also argues on appeal that his postconviction counsel failed to provide reasonable assistance because counsel did not amend defendant's *pro se* petition to include the claim that he should have received a fitness hearing.

A defendant has no constitutional right to the assistance of counsel in a postconviction proceeding. <u>People v. Rials,</u> 345 Ill. App. 3d 636, 641 (2003). Postconviction proceedings are statutory in nature and the Act prescribes the degree of legal assistance available to a postconviction petitioner. <u>Rials,</u> 345 Ill. App. 3d at 641. That is, a petitioner is only entitled to a "reasonable" degree of assistance, which is a lesser standard than the "effective" assistance of counsel guaranteed by the federal and state constitutions. <u>Pendleton,</u> 223 Ill. 2d at 472.

To that end, Supreme Court Rule 651(c) enumerates the specific requirements that postconviction counsel must satisfy in representing postconviction petitioners. 134 Ill. 2d R. 651(c); <u>Pendleton,</u> 223 Ill. 2d at 472. Under Rule 651(c), the record must demonstrate that postconviction counsel consulted with the defendant to ascertain his contentions regarding the deprivation of his constitutional rights, examined the record of the proceedings at trial, and made any amendments to the petition that were necessary to ensure that the defendant's contentions

1-07-3242

were adequately presented. 134 Ill. 2d R. 651(c); Pendleton, 223 Ill. 2d at 472. However, postconviction counsel is not required to amend a *pro se* petition. Rials, 345 Ill. App. 3d at 641.

In determining whether to amend a *pro se* petition, counsel is only required to investigate and properly present the *petitioner's* claims made in his original postconviction petition. Pendleton, 223 Ill. 2d at 475. Postconviction counsel need only "ascertain[ ] the basis of [defendant's] complaints, shape[ ] those complaints into appropriate legal form and present[ ] them to the court." Rials, 345 Ill. App. 3d at 641, quoting People v. Szabo, 144 Ill. 2d 525, 532 (1991). However, a postconviction petitioner is not entitled to "the advocacy of counsel for purposes of exploration, investigation, and formulation of potential claims." People v. Davis, 156 Ill. 2d 149, 163 (1993). Although postconviction counsel may raise additional issues in an amended petition, there is no requirement that counsel "comb the record" for issues not raised in the original petition. Pendleton, 223 Ill. 2d at 476; Rials, 345 Ill. App. 3d at 641, quoting People v. Helton, 321 Ill. App. 3d 420, 424-25 (2001). In fact, Rule 651(c) only requires counsel to review "as much of the record as necessary to adequately present and support those constitutional claims raised by the defendant." Pendleton, 223 Ill. 2d at 475-76.

Here, in his *pro se* petition, defendant only raised issues regarding trial counsel's failure to call certain witnesses, the prosecutor's failure to present exculpatory evidence, his alleged right to a sentencing hearing before a jury, the court's denial of his motion for new counsel, and appellate counsel's ineffectiveness for failing to present any issues on direct appeal. Postconviction counsel's only obligation was to review the record to ensure that those claims were adequately developed and presented to the circuit court in a legally appropriate manner.

1-07-3242

Counsel was not obligated to review the record to ascertain any potential claim of error not raised in the original petition or to amend the petition to include those claims. See Rials, 345 Ill. App. 3d at 643; People v. Richardson, 382 Ill. App. 3d 248, 256 (2008). Moreover, counsel satisfied his obligations under Rule 651(c) by filing a certificate of compliance with the circuit court indicating that he ascertained defendant's deprivation of constitutional rights, read the *pro se* petition and transcripts, and determined that defendant's petition adequately presents his claims of constitutional deprivation. Therefore, we find that defendant was not denied reasonable assistance of postconviction counsel where counsel did not amend the postconviction petition to add a new claim.

 For the foregoing reasons, we affirm the judgment of the circuit court.

 Affirmed.

 THEIS, J., with CUNNINGHAM, P.J., and KARNEZIS, J., concurring.

## CERTIFICATE OF COMPLIANCE

I, Michael G. Soukup, certify that this petition conforms to the requirements of Supreme Court Rule 341(a) and 315(d). The length of this petition, excluding pages containing the Rule 341(d) cover, the Rule 341(c) certificate of compliance, and those matters to be appended to the petition under Rule 315(c) is 20 pages.

MICHAEL G. SOUKUP
Assistant Appellate Defender