# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES ex rel. WILLIAM HOLLAND, ) ) ) | |
| Petitioner, ) | No. 10 C 4169 |
| ) | |
| v. ) | Judge Ruben Castillo |
| ) | |
| DAVE REDNOUR,[1] Warden, Menard Correctional Center, ) ) ) | |
| ) | |
| Respondent. ) ) | |

## MEMORANDUM OPINION AND ORDER

Illinois prisoner William Holland ("Holland") is serving a life sentence for the murder of his estranged wife. (R. 14, State Ct. R., Ex. I at 1.) Presently before the Court is Holland's *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Section 2254"), which alleges that various constitutional violations occurred in his state court proceedings. (R. 6, Pet. at 5-6.)[2] For the reasons stated below, Holland's petition for writ of habeas corpus is denied.

---

[1] Dave Rednour ("Respondent") is presently the warden at Menard Correctional Center and is substituted as the proper respondent in this matter. *See* Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts; Fed. R. Civ. P. 25(d); *Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004).

[2] The Court's docket indicates that Holland has filed two petitions. (*See* R. 1, Pet.; R. 6, Pet.) Because the allegations and arguments are identical, the Court will rely upon the latest petition filed by Holland.

# BACKGROUND[3]

Following a bench trial, Holland was convicted of first-degree murder and sentenced to life imprisonment. (R. 14, State Ct. R., Ex. I at 1.) The relevant testimony at trial established that on January 22, 1999, Holland approached his wife, Mattie Jones-Holland ("Jones-Holland"), at the bar they owned and fatally shot her. (*Id.*; Ex. C at 2.) During an interview with police detectives after his arrest, Holland stated that he and Jones-Holland had ongoing marital problems. (R. 14, State Ct. R., Ex. I at 1.) Specifically, he stated that Jones-Holland had obtained an order of protection against him after he assaulted her. (*Id.*) Holland told the detectives he had brought his gun with him to the bar and that upon seeing Jones-Holland, he became angry and shot her. (*Id.* at 2.)

In his trial testimony, Holland stated that he was prohibited by the order of protection from entering the bar, but nevertheless went there to retrieve some belongings, including a gun. (*Id.*) He also testified that Jones-Holland approached him at the bar with a gun. (*Id.*) Also in his testimony, Holland stated that Ray Johnson ("Johnson"), a patron of his bar, then approached him and tried to stab him with a dart. (*Id.*) According to Holland, Johnson's actions left a tear in the lower left sleeve of his jacket. (R. 15, State Ct. R., Ex. N at C25.) While Holland testified

---

[3] In reviewing a petition for habeas corpus relief pursuant to Section 2254, a court must presume that state court factual determinations are correct. 28 U.S.C. § 2254(e)(1). This presumption can be overcome where the petitioner rebuts those facts by clear and convincing evidence. *Id.* The following summary of relevant facts is therefore properly derived from the state court opinions issued by Illinois courts and is supplemented where appropriate by the appellate record submitted to the Court pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. *See Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir. 2002); *accord Rever v. Acevedo*, 590 F.3d 533, 537 (7th Cir. 2010) (holding that although a federal court's review is limited to the last decision to address the arguments on the merits, its deference to factual findings in state court is not so limited).

that he shot Jones-Holland in self-defense, this testimony was undermined on cross-examination when he stated that he did not see anything in Jones-Holland's hand when he shot her. (R. 14, State Ct. R., Ex. I at 2.)

The state trial court rejected Holland's self-defense theory and found him guilty of first-degree murder. (*Id.*) Because Holland killed Jones-Holland while she had an order of protection against him, the state trial court determined that he was eligible for the death penalty. (*Id.*)

During the capital sentencing hearing, the state called witnesses to testify about Holland's prior arrests and convictions. (*Id.*) Additionally, three officers testified that Holland assaulted them while in custody. (*Id.*) In mitigation, Holland presented a report prepared by Dr. Larry Heinrich, a forensic psychologist who examined Holland and concluded that he suffered from various mental disorders, including bipolar disorder, paranoid personality disorder, and early dementia. (*Id.* at 3.)

At the end of the hearing, the state trial court sentenced Holland to a term of natural life. (*Id.*) In doing so, the state trial court noted that the Heinrich report was "sufficient evidence to mitigate a death sentence." (*Id.*) It also discussed two psychological examinations of Holland that were conducted before a trial that had taken place twenty years earlier which arrived at conflicting conclusions regarding Holland's sanity. (*Id.*)

Holland appealed his conviction to the Illinois Appellate Court, First Judicial District. On appeal, the public defender representing Holland filed a motion for leave to withdraw under *Anders v. California*, 386 U.S. 738 (1967), which stated that there were no appealable issues. (*Id.*) Holland filed a response to the *Anders* brief in which he argued that his trial counsel provided ineffective assistance by, *inter alia*, failing to conduct a proper pretrial investigation

3

and failing to retrieve his torn jacket. (R. 14, State Ct. R., Ex. B at 3.) He also contended that certain exculpatory evidence was either not turned over or sabotaged. (*Id.* at 3.) Additionally, Holland maintained that his appellate counsel was ineffective because she was "incompetent" and never consulted with him. (*Id.* at 3-4, 9.) On December 19, 2003, the public defender's motion was granted and the judgment of the state trial court was affirmed. (*Id.*, Ex. C at 1-7.) Holland subsequently filed a petition for leave to appeal to the Illinois Supreme Court; this petition was denied on May 26, 2004. (*Id.*, Ex. D; Ex. E.)

On September 8, 2004, Holland filed a *pro se* state postconviction petition. (*Id.*, Ex. F at 16.) In it, he claimed, *inter alia*, ineffective assistance of counsel and various other due process violations. (R. 15, State Ct. R., Ex. Q at 16-24.) After the state trial court appointed counsel for Holland, it dismissed his petition in October 2007. (R. 14, State Ct. R., Ex. F at 3, 16-17.) The following month, Holland appealed the denial of his postconviction petition. (*See id.* at 3.)

On appeal, Holland presented two primary arguments. First, he contended that the trial court's failure to evaluate his competency to stand trial, despite his history of mental illness and his inappropriate behavior during sentencing, "strikes at the very heart of principles of fundamental fairness and notions of due process." (*Id.*, Ex. F at 18-27.) Second, Holland argued that by failing to amend his *pro se* petition to include arguments regarding his competency, his state postconviction counsel did not provide the "reasonable level of assistance" required by state statute. (*Id.* at 28-34.)

In December 2009, the Illinois Appellate Court, First Judicial District ("state appellate court") affirmed the denial of his state postconviction petition. (*Id.*, Ex. I at 10.) In doing so, it rejected both of Holland's arguments. Specifically, the state appellate court found that Holland's

competency claim was procedurally defaulted. (*Id.* at 6-8.) Additionally, it held that Holland's postconviction counsel did provide a "reasonable level of assistance." (*Id.* at 8-10.) Holland subsequently filed a petition for leave to appeal to the Illinois Supreme Court; this petition was denied on May 24, 2010. (*Id.*, Ex. J; Ex. K.)

Holland filed his *pro se* federal habeas petition in July 2010. (R. 6, Pet.) In his petition, Holland claims the following: (I) he received ineffective assistance of counsel at trial because his attorney "wouldn't obtain certain records . . . or property until [the] day before trial"; (II) the state failed to disclose exculpatory evidence and knowingly used perjured testimony; (III) his counsel on direct appeal was ineffective; (IV) his ability to appeal his conviction was hampered by his failure to receive the transcript of a particular witness' testimony in a timely manner; (V) his state postconviction counsel provided ineffective assistance; (VI) he should have been charged with a lesser charge; and (VII) he should have been given a sanity hearing to determine his fitness to stand trial. (R. 6, Pet. at 5-6.) On September 20, 2010, Respondent filed a response which set forth various grounds to deny Holland habeas relief. (R. 13, Answer.)

## LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), habeas relief may be granted only when a state court decision is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Etherly v. Davis*, 619 F.3d 654, 660 (7th Cir. 2010). The statutory phrase "clearly established Federal law as determined by the Supreme Court of the United States," is a critical limitation under Section 2254(d)(1) and refers

5

to "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state court decision." *Washington v. Smith*, 219 F.3d 620, 627 (7th Cir. 2000) (quoting *Terry Williams v. John Taylor*, 529 U.S. 362, 412 (2000)).

"A decision is 'contrary to' federal law when the state court applied a rule that 'contradicts the governing law' set forth by the Supreme Court or if the state court reached a different outcome based on facts 'materially indistinguishable' from those previously before the Supreme Court." *Etherly*, 619 F.3d at 660 (quoting *Williams*, 529 U.S. at 405-06). On the other hand, "[a] state court unreasonably applies federal law if it identifies the correct legal principle but unreasonably applies it to the facts of the case, or if it unreasonably refuses to extend a principle to a context in which it should apply." *Goudy v. Basinger*, 604 F.3d 394, 399 (7th Cir. 2010) (citing *Williams*, 529 U.S. at 407).

To succeed on a claim predicated on Section 2254(d)'s "unreasonable application" clause, a petitioner must show that the state court's application of federal law was both incorrect and unreasonable. *Toliver v. McCaughtry*, 539 F.3d 766, 775 (7th Cir. 2008) (quoting *Raygoza v. Hulick*, 474 F.3d 958, 963 (7th Cir. 2007)). "A state court's decision is 'unreasonable' within the meaning of § 2254(d)(1) only if it is 'so erroneous as to be objectively unreasonable' and 'well outside the boundaries of permissible differences of opinion.'" *Bennett v. Gaetz*, 592 F.3d 786, 790 (7th Cir. 2010) (quoting *Emerson v. Shaw*, 575 F.3d 680, 684 (7th Cir. 2009)). Additionally, a state court decision may be considered unreasonable where it is in "tension with governing U.S. Supreme Court precedents, or so inadequately supported by the record, or so arbitrary" as to be unreasonable. *Badelle v. Correll*, 452 F.3d 648, 655 (7th Cir. 2006) (internal quotation marks and citation omitted). Put simply, "a state court's decision 'minimally

consistent with the facts and circumstances of the case' is not unreasonable[.]" *Conner v. McBride*, 375 F.3d 643, 649 (7th Cir. 2004) (quoting *Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir. 1997)).

As a general matter, under post-AEDPA habeas law, federal courts defer to a great extent to the decisions of state courts, and review those decisions for reasonableness only. *Ben-Yisrayl v. Buss*, 540 F.3d 542, 546 (7th Cir. 2008). This deference, however, "does not imply abandonment or abdication of judicial review." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## ANALYSIS

### I. Holland's claims

#### A. Rule 2(c) of the Rules Governing Section 2254 Cases

To begin, Respondent argues that Holland's first three claims should be dismissed under Rule 2(c) of the Rules Governing Section 2254 Cases in The United States District Courts ("Habeas Rules"). (R. 13, Answer.) According to Respondent, "Claims I-III should be dismissed because they lack the specific facts required by Habeas Rule 2(c)(2)." (*Id.* at 6.)

Respondent is correct in noting that the Habeas Rules do set forth certain pleading requirements. Habeas Rule 2(c) requires that a petition "specify all grounds for relief available to the petitioner" and "state the facts supporting each ground." The Supreme Court has observed that this requirement is more demanding than what is required under Federal Rule of Civil Procedure 8. *Mayle v. Felix*, 545 U.S. 644, 655 (2005). "A prime purpose of Rule 2(c)'s demand that habeas petitioners *plead with particularity* is to assist the district court in determining whether the State should be ordered to 'show cause why the writ should not be granted.'" *Id.* (emphasis added). While Rule 8's notice pleading requirement is not sufficient for

7

a habeas petition, "there is no requirement that a habeas petitioner enumerate in his petition every fact which supports a ground for relief." *Lloyd v. Van Natta*, 296 F.3d 630, 633 (7th Cir. 2002).

In Claim I, Holland asserts that he received ineffective assistance of counsel at trial because his lawyer failed to "obtain certain records." (R. 6, Pet. at 5.) Under Habeas Rule 2(c), this argument is plainly insufficient. His petition does not provide the slightest inkling regarding what records should have been obtained. (*See id.*) Thus, Claim I fails to the extent Holland grounds his ineffective assistance of counsel claim on a failure to retrieve records.

The other portion of Holland's ineffective assistance of counsel claim requires a different outcome under Rule 2(c). He predicates this portion of his claim on his trial counsel's failure to obtain some of his property. (*Id.*) The portion of his petition setting forth this claim, however, does not specify what property Holland is referring to. (*See id.*) This ambiguity does not doom Holland's claim, as the Court must construe his *pro se* petition liberally. *Perruquet v. Briley*, 390 F.3d 505, 512 (7th Cir. 2004). Such a construction leads the Court to believe that the property Holland refers to is the torn jacket he was wearing on the night of the incident which, he has claimed, supports his self-defense theory. Put simply, he appears to argue that his trial counsel was ineffective for failing to retrieve evidence that could have assisted his defense. Such an assertion, the Court finds, is barely enough to clear the Rule 2(c) hurdle.

Claim II is not as fortunate. In Claim II, Holland merely presents naked assertions that bring to mind certain constitutional violations, but fail to provide any factual basis that would entitle him to relief. Specifically, Holland alleges that the "prosecutor's knowing use of perjured testimon[y] [] violat[ed] [the] due process clause"; he also claims that the prosecutor "failed to turn over crucial evidence[]." (R. 6, Pet. at 5.) While these allegations clearly evoke a criminal

defendant's rights under *Napue v. Illinois*, 360 U.S. 264 (1959) and *Brady v. Maryland*, 373 U.S. 83 (1963), he provides no facts to support his claims. (*See* R. 6, Pet. at 5.) His conclusory assertions would not even survive Rule 8's notice pleading standard, let alone Rule 2(c)'s more stringent demands. Accordingly, Holland's petition is denied to the extent it seeks relief based on the allegations in Claim II.

Claim III is also deficient under Rule 2(c). All Holland claims is that his counsel on direct appeal was ineffective because she "did not do anything for [him]." (*See* R. 6, Pet. at 5.) Again, it unclear what Holland is specifically claiming. Based on the Court's reading of his petition, Holland appears to be generally arguing that his appellate counsel violated *Strickland v. Washington*, 466 U.S. 668 (1984) in filing an *Anders* brief. He fails, however, to state how his appellate counsel's performance was deficient. In filing an *Anders* brief, "counsel renders constitutionally adequate assistance when [she] conscientiously examines the case; files a brief referring to anything in the record that might arguably support the appeal; forwards a copy of the brief to the defendant; and informs the defendant of his right to present to the court other issues which [she] feels have merit." *U.S. ex rel. Russo v. Att'y Gen. of Ill.*, 780 F.2d 712, 715 (7th Cir. 1986). Claim III fails to highlight which of these requirements were not satisfied by his appellate counsel; it therefore does not meet Rule 2(c)'s requirements. (*See* R. 6, Pet.) Holland's plea for habeas relief based on the allegation in Claim III is denied.

### B. Ineffective assistance of counsel

In addition to claiming that his counsel on direct appeal was ineffective, Holland also argues that his trial and state postconviction counsel also violated his rights under *Strickland*. (*See* R. 6, Pet. at 5.) The Court will address each contention separately.

9

### 1.  Trial counsel

While his ineffective assistance of counsel claim related to his trial counsel's performance crosses the Rule 2(c) threshold, doing so does not necessarily entitle him to habeas relief. "Under *Strickland*, a defendant must demonstrate both that his counsel's performance was deficient when measured against prevailing standards of professional reasonableness, and that the deficient performance prejudiced his defense." *Ebert v. Gaetz*, 610 F.3d 404, 411 (7th Cir. 2010) (citing *Strickland*, 466 U.S. at 689-92). To be considered deficient, representation must fall below "an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. With respect to the prejudice requirement, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "[A] court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Id.* at 696. A court need not "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. Thus, if a defendant fails to demonstrate prejudice, a court can dispose of his claim without evaluating his counsel's performance. *See id.*

On habeas review, courts do not apply the *Strickland* standards directly, but instead ask whether the state court's factual findings and conclusions pass AEDPA muster. *See Conner*, 375 F.3d at 657. Specifically, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable–a substantially higher threshold.'" *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1420 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Indeed, "[t]he bar for

10

establishing that a state court's application of the *Strickland* standard was 'unreasonable' is a high one, and only a clear error in applying *Strickland* will support a writ of habeas corpus." *Allen v. Chandler*, 555 F.3d 596, 600 (7th Cir. 2009).

Here, the last state court to review Holland's *Strickland* claim flowing from his trial counsel's failure to retrieve his torn jacket is the state appellate court on direct review. In its decision, the state appellate court rejected this claim because of a lack of prejudice. (R. 14, State Ct. R., Ex. C at 5.) Specifically, it found that "[t]he evidence against [Holland] was overwhelming, and as the [trial] court stated [in finding him guilty], locating [Holland's] jacket would have made no difference to [his] case." (*Id.*) The Court finds that this decision warrants deference under AEDPA.

In various parts of the record, Holland claims that his torn jacket would have supported his self-defense theory. (*Id.*, Ex. D at 14.) He has specifically asserted that he needed the torn jacket at trial to prove that Johnson attacked him first. (*Id.*) Like the state appellate court, the Court concludes that Holland was not prejudiced by the absence of his torn jacket at trial. Indeed, in rejecting Holland's self-defense theory, the state trial court "assume[d] for purposes of evidence that [Holland's jacket] did have a rip on the sleeve." (*Id.*, Ex. N at C76.) Despite this assumption, it found that the torn jacket "would not have been sufficient to raise self-defense." (*Id.*) Because the state trial court took into consideration the tear on the lower left sleeve of Holland's jacket and still rejected his self-defense theory, the Court finds that there is no reasonable probability that the outcome of his trial would have been any different had his jacket been introduced at trial. As a result, the Court finds that Holland was not prejudiced by its absence. Thus, because state appellate court's identical conclusion is at least "minimally

consistent with the facts and circumstances of the case," *Conner*, 375 F.3d at 649, the Court finds that its ruling was not the product of an unreasonable application of federal law. Accordingly, Holland cannot obtain habeas relief based on the allegations in Count I.

### 2. State postconviction counsel

Next, Holland argues that he is entitled to habeas relief based on the allegedly constitutionally deficient performance of his state postconviction counsel. (*See* R. 6, Pet. at 5.) Unfortunately for Holland, he cannot bring such a claim in federal habeas proceedings. Indeed, AEDPA is quite clear on this point: "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). Claim V is therefore rejected as a basis for granting habeas relief.

## C. Procedural default

Respondent contends that Holland's remaining assertions, which are set forth in Claims IV, VI, and VII, are procedurally defaulted. Specifically, he argues that these claims are "procedurally defaulted because [Holland] failed to raise them in one complete round of state court review." (R. 13, Answer at 10.) Before separately addressing Claim VII, the Court will examine whether Claims IV and VI are procedurally defaulted.

### 1. Claims IV and VI

The procedural default doctrine normally will preclude a federal court from reaching the merits of a habeas claim when either: (1) that claim was presented to the state courts and the state-court ruling against the petitioner rests on adequate and independent state-law procedural grounds; or (2) the claim was not presented to the state courts and it is clear that those courts

would now hold the claim procedurally barred. *Perruquet*, 390 F.3d at 514.

In this case, it is evident that Holland did not present Claims IV and VI to the state courts. "A petitioner fairly presents his federal claim to the state courts when he articulates both the operative facts and the controlling legal principles on which his claim is based. He need not cite book and verse on the federal constitution. But he must, in some manner, alert the state courts to the federal underpinnings of his claim." *Id.* at 519-20 (internal quotation marks and citations omitted). In his state court proceedings, Holland never claimed that his ability to appeal his conviction was hampered by his failure to receive the transcript of a particular witness' testimony in a timely manner; nor did he contend that he should have been charged with a lesser charge. (*See* R. 14, State Ct. R., Ex. B at 1-9; Ex. D at 1-20; Ex. F at 1-35; Ex. J at 13-20.) Thus, the Court finds that Holland did not present Claims IV and VI to a state court.

When a claim is not presented to the state courts and it is clear that they would now hold the claim procedurally barred, a federal habeas court is precluded from reaching the merits of the claim. *Perruquet*, 390 F.3d at 514. Here, it is clear that Illinois courts would hold that both Claims IV and VI are procedurally barred. The Illinois Post-Conviction Hearing Act (the "Act") contemplates the filing of only one petition, and "a ruling on a post-conviction petition has *res judicata* effect with respect to all claims that were raised or could have been raised in the initial petition." *People v. Caballero*, 688 N.E.2d 658, 661 (1997) (citations omitted); *cf. People v. Erickson*, 641 N.E.2d 455, 458 (1994) ("Failure to raise a claim which could have been addressed on direct appeal is a procedural default which results in a bar to consideration of the claim's merits in a post-conviction proceeding."). Holland has already filed a state postconviction petition, which failed to include the allegations contained in Claims IV and VI.

13

(*See* R. 14, State Ct. R., Ex. F at 1-35; Ex. J at 13-20; R. 15, State Ct. R., Ex. Q at 16-24.) Since he could have raised these claims, the Court is convinced that a state court would now hold that these claims are procedurally defaulted. Accordingly, the Court finds that federal procedural default doctrine places Claims IV and VI outside the scope of federal habeas review.

### 2. Claim VII

In Claim VII, Holland contends that the state trial court violated his due process rights by not ordering a sanity hearing to determine his fitness to stand trial. (*See* R. 6, Pet. at 6.) Again, Respondent argues that this claim is procedurally defaulted. (R. 13, Answer at 10.) Although Holland did raise this issue in Illinois courts, the Court finds that it is unable to review Claim VII.

If a state court clearly and expressly states that its judgment rests on a state procedural bar and does not reach the merits of a federal claim, then a federal court is unable to consider that claim on collateral review. *Gray v. Hardy*, 598 F.3d 324, 329 (7th Cir. 2010) (citing *Harris v. Reed*, 489 U.S. 255, 263 (1989)). Under this rule, "if a state court did not reach a federal issue because it applied, evenhandedly, a state procedural rule, the matter is closed to the federal habeas court absent a showing of cause and prejudice." *Rodriguez v. McAdory*, 318 F.3d 733, 735 (7th Cir. 2003) (internal quotation marks and citation omitted).

Holland did not raise the allegation contained in Claim VII in his state direct review proceedings. (*See* R. 14, State Ct. R., Ex. B at 1-9; Ex. D at 1-20.) The first instance in which he presented this claim was on appeal of the denial of his state postconviction petition. (*See id.*, Ex. F at 18; Ex. Q at 16-24.) As a result of his failure to present this claim in his original petition, the state appellate court clearly applied state forfeiture doctrine and unequivocally found that

14

Holland's due process claim was procedurally defaulted. (*See id.*, Ex. I at 5-8.) Because the state appellate court's judgment clearly rests on a state procedural bar, the Court cannot consider Claim VII.[4]

In sum, the Court finds that none of Holland's claims entitle him to federal habeas relief. Specifically, the Court finds that his various claims are either impermissibly vague, procedurally defaulted, unmeritorious, or not cognizable on federal habeas review.

## II. Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant Holland a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) in this order.

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition; instead, he must first request a certificate of appealability. *See Miller-El*, 537 U.S. at 335. A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Evans v. Circuit Ct. of Cook Cnty., Ill.*, 569 F.3d 665, 667 (7th Cir. 2009). Under this standard, Holland must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). In cases where a district court denies a habeas

---

[4] In his filings to the Court, Holland does not attempt to provide a cause to explain his procedural defaults. (*See* R. 6, Pet.; R. 17, Reply.)

15

claim on procedural grounds, the Court should issue a certificate of appealability only if the petitioner shows that (1) "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," and (2) "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

In this case, the Court concludes that jurists of reason would not find it debatable whether Holland's petition should have been resolved in a different manner. Further, jurists of reason would not find the Court's procedural default conclusions debatable. Accordingly, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For the reasons stated herein, Holland's petition for habeas corpus (R. 1; R.6) is DENIED. The Clerk of the Court is directed to enter a final judgment against petitioner. Additionally, the Court will not issue a certificate of appealability from this final judgment for the reasons stated above.

Entered: *[signature]*

**Judge Ruben Castillo**
**United States District Court**

**Dated:** December 29, 2010

16